478 So.2d 502 (1985)
Thomas J. BAILEY and Esther C. Bailey, His Wife, Petitioners,
v.
FIRST MORTGAGE CORP. OF BOCA RATON, a Florida Corporation, Respondent.
No. BG-214.
District Court of Appeal of Florida, First District.
November 15, 1985.
Richard B. Davis, Jr., Jasper, for petitioners.
Ernest A. Sellers and Andrew J. Deckers, III, of Airth, Sellers, Lewis & Decker, Live Oak, for respondent.
SHIVERS, Judge.
Thomas J. Bailey and Esther C. Bailey petition for writ of certiorari, seeking review of an opinion of the circuit court of Suwannee County which affirmed in its appellate capacity, a final judgment of the county court of Suwannee County.
The Baileys raise as issues: (1) whether unsatisfied lien mortgages and unassigned leases constitute defects in title and (2) whether the Baileys, as sellers, had 120 days to cure any defects in title.
*503 Although we agree with the Baileys that unsatisfied liens, mortgages and unassigned leases not provided for in the contract are defects in the title we deny certiorari because of the Baileys' election to terminate the contract.
On September 30, 1982, the Baileys contracted to sell to respondent First Mortgage Corporation of Boca Raton (First Mortgage) 9.5 acres of land in Suwannee County for $20,000. Respondent, a buyer, gave the Baileys a $1500 down payment. The contract provided for a title insurance commitment, in accordance with "Standard A" and the delivery of marketable title at closing. The contract provided for a closing date of February 1, 1982 "unless extended by other provisions of the contract." (February 1, 1982 was treated by the parties as if it had read February 1, 1983.) Standard "A. Evidence of Title" appearing on the reverse side of the contract under Subsection 2 provided for:

a title insurance commitment issued by a qualified title insuror agreeing to issue to Buyer, upon recording of the deed to Buyer, an Owner's policy of title insurance in the amount of the purchase price, insuring title of the Buyer to the Property, subject only to liens, encumbrances, exceptions or qualifications set forth in this Contract and those which shall be discharged by the seller at or before closing. Buyer shall have 30 days, if abstract or 5 days, if title commitment, from date of receiving evidence of title to examine same. If title is found defective, Buyer shall, within 3 days thereafter, notify Seller in writing specifying defect(s). If said defect(s) render title unmarketable, Seller shall have 120 days from receipt of notice within which to remove said defect(s), and if Seller is unsuccessful in removing them within said time, Buyer shall have the option of either (1) accepting the title as it then is, or (2) demanding a refund of all money paid hereunder which shall forthwith be returned to Buyer and thereupon Buyer and Seller shall be released, as to one another, of all further obligations under the Contract; however, Seller agrees that he will, if title is found to be unmarketable, use diligent effort to correct the defect(s) in the title within the time provided therefor, including the bringing of necessary suits.
On November 16 and December 16, 1982 the buyer's attorney requested the title insurance commitment. On December 30, 1982 a copy of that document was provided, but it revealed four mortgages, two financing statements, and an oil, gas and mineral lease. On January 3 and January 28, the buyer's attorney requested the original title commitment and proposed releases for the mortgages and oil lease. In the January 28 letter, the buyer's attorney also reminded the sellers' attorney of the February 1 closing date. On February 17, 1983 the buyer's attorney advised the sellers' attorney that the buyer had elected to terminate the contract for failure to timely deliver marketable title. On March 17, 1983 the buyer's attorney, upon hearing that one of the mortgagees was willing to release one of the mortgages, wrote the sellers' attorney that if all the necessary releases could be obtained within a week, the buyer would be willing to proceed with the purchase; however, the letter stated that the previous default, of the sellers, had not been waived.
On April 1, 1983, the sellers' attorney notified the buyer's attorney that the contract in question was terminated, advising that his clients had received an offer on the property exceeding that of the buyer, and would now only agree to sell for a purchase price of $30,000.
The buyer filed suit in county court for the return of the $1500 deposit plus interest, costs and attorney's fees. The county court ruled in favor of the buyer. On appeal the circuit court affirmed the county court's decision. The sellers then appealed to this court, which appeal we have treated as a petition for writ of certiorari.
Sellers argue that the encumbrances and the lease reflected on the title commitment constitute defects in title such as to render the title unmarketable. Sellers therefore *504 maintain that the contract entitled them to 120 days within which to cure said defects. They contend that since they were not in default when the buyer chose to terminate, they are entitled to retain the down payment.
We agree that undisclosed liens, encumbrances, exceptions or qualifications constitute defects in the title to real property which render title unmarketable within the meaning of the standard real estate contract employed by the parties. "[A] mortgage standing undischarged of record against land sold by executory contract constitutes a defect in the vendor's title... ." Annot., 57 A.L.R. 1253, 1379 (1928).
A good or marketable title is one that is clear and free from reasonable doubt. When the vendor of real property, expressly or by implication, agrees to convey a good title or marketable title, that undertaking is discharged only by the conveyance of a title unencumbered and free from reasonable doubt as to any question of law or fact necessary to sustain its validity.
44 Fla.Jur.2d. Real Property Sales and Exchanges § 82 (1984) (emphasis supplied), citing Wheeler v. Sullivan, 90 Fla. 711, 106 So. 876 (1925).
It is clear that the title in the present case was not marketable due to the existence of the undisclosed encumbrances and leases. Encumbrances and leases not provided for contractually and not earmarked to be satisfied by the proceeds of the sale constitute defects.
We also agree that the sellers had 120 days within which to cure the defects in title. However, it is clear that sellers, prior to the expiration of the 120 day period, by their April 1, 1983 letter, elected to terminate the contract, thereby waiving the remaining days they had to clear the title.
Sellers have not demonstrated that the circuit court's opinion constituted a departure from the essential requirements of law, Kennington v. Gillman, 284 So.2d 405 (Fla. 1st DCA 1973), and the writ of certiorari is denied.
WENTWORTH and WIGGINTON, JJ., concur.