TRANSAMERICA PREMIER INSURANCE COMPANY, Plaintiff,

v.

K & S CONSTRUCTION, Kurt Shepard and Sandra Shepard, Defendants.

No. 93-K-2261.

United States District Court, D. Colorado.

April 25, 1994.

Edgar L. Neel, and Kelly K. Robinson, Weller Friedrich, LLC, Denver, CO, for plaintiff.

William L. Bruckner, Corona & Balistreri, San Diego, CA, James Hatter, Fossum, Hatter & Green, Cortez, CO, for defendants.

MEMORANDUM OPINION AND ORDER

KANE, Senior District Judge.

This case arises out of a General Indemnity Agreement (the "Indemnity Agreement") executed by Defendants Kurt Shepard and Sandra Shepard, doing business as Defen-

dant K & S Construction ("K & S") in favor of Plaintiff Transamerica Premier Insurance Company. Before me is Transamerica's motion to dismiss Defendants' counterclaims for failure to state a claim upon which relief can be granted. For the reasons stated below I grant the motion, treated as one for summary judgment.

## I. *Background.*

At the request of Defendants, Transamerica executed numerous payment and performance bonds on behalf of K & S, as principal, to various general contractors, as obligees, in connection with construction projects between K & S and those obligees. In consideration of Transamerica's issuance of these bonds on behalf of K & S, Defendants executed the Indemnity Agreement in favor of Transamerica, as surety, on February 8, 1989. The Indemnity Agreement provides in pertinent part:

### 3. DEFAULT

Principal shall be in Default with respect to a Contract, and hereunder if any of the following occur:

. . . .

C. Principal fails to pay for any labor or materials when such payment is due.

. . . .

### 4. REMEDIES UPON DEFAULT

In the event of Default, as defined above, Surety may at its option and sole discretion:

A. Take over any Contract and arrange for its completion.

B. Take possession of the Principal's equipment, materials and supplies at the site of the work or elsewhere, and utilize the same for completion of any Contract.

C. Take possession of the office equipment, books and records of Principal as are necessary for completion of any contract.

D. Loan such funds, guarantee a loan for such funds, as Surety shall deem necessary for the completion of any Contract and for the discharge of surety in connection with any Contract. Repayment of such loan shall be covered by the indemnity hereunder.

E. File an immediate suit to enforce the provisions of this Agreement.

. . . .

### 6. ASSIGNMENT

As security for the performance of all the provisions of this agreement, the Undersigned hereby assign, transfer, pledge and convey to the Surety (effective as of the date of each such bond or bonds, but only in the event of Default referred to in preceding Section 3):

A. All rights in connection with any Contract, including but not limited thereto:

. . . .

4. All rights arising out of insurance policies, notes and accounts receivable.

(Compl., Ex. A at 1.)

Defendants allege that during construction of some of the bonded projects, "K & S discovered changed conditions, differing site conditions, defective plans and specifications and errors and omissions of construction documents, which caused K & S delay, disruption, inefficiency, impact, performance of work out of sequence, incremental costs due to weather protection expenses, and extended home office and field overhead." (Am.Countercl. ¶ 5.) Defendants claim that on April 5, 1993, K & S requested financial assistance from Transamerica to complete various bonded projects and that Transamerica refused K & S' request. K & S was placed in default on some of those contracts bonded by Transamerica on behalf of K & S. Transamerica thereafter took over and completed various projects.

Transamerica filed suit against Defendants to enforce the Indemnity Agreement and recover all losses sustained under the bonds. Defendants answered and, on May 7, 1994, filed a document named as a first amended counterclaim. In effect, this document states five different counterclaims for (1) breach of contract; (2) breach of the implied covenant of good faith and fair dealing; (3) tortious interference with prospective economic advantage; (4) intentional interference with contractual relations; (5) intentional infliction of emotional distress. These counterclaims all center on general allegations that Trans-

america caused K & S' accounts receivable to be transferred to it before K & S was in default and before K & S requested financial assistance.

Transamerica seeks dismissal of the counterclaims on the grounds that it acted in accordance with the plain terms of the Indemnity Agreement. Defendants argue that (1) K & S was not in default on the projects at the time that Transamerica caused the accounts receivable to be transferred to it and therefore acted in breach of the Indemnity Agreement; (2) Transamerica acted in bad faith and irrationally in exercising its "sole discretion" by not financially assisting K & S; and (3) Transamerica's breach of the Indemnity Agreement was improper conduct which supports Defendants' tort claims.

## II. *Standard for Motion.*

The motion is characterized as a Fed. R.Civ.P. 12(b)(6) motion for failure to state a claim upon which relief may be granted. Since both Transamerica and Defendants have submitted additional evidence beyond the pleadings, I treat the motion as a Rule 56 motion for summary judgment. Fed. R.Civ.P. 12(b); *see Wheeler v. Hurdman,* 825 F.2d 257, 258–60 (10th Cir.), *cert. denied,* 484 U.S. 986, 108 S.Ct. 503, 98 L.Ed.2d 501 (1987). At oral argument counsel for both parties agreed to this treatment of the motion. Under Rule 56(c), summary judgment will be appropriate if the pleadings and affidavits show that there is no genuine issue as to any material fact and that Transamerica is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The opposing party may not rest upon mere allegations or denials in the pleadings but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). Summary judgment will be granted against the party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex Corp.,* 477 U.S. at 322, 106 S.Ct. at 2552.

## III. *Merits.*

Transamerica asserts that the five counterclaims, grounded in Transamerica's failure to provide financial assistance, fail as a matter of law. Transamerica maintains that it was entitled to refuse financial assistance to K & S because K & S was in default and, under the Indemnity Agreement, Transamerica had the sole discretion to loan funds to K & S for the completion of any bonded contract.

K & S asserts that it was forced into default by Transamerica's wrongful assignment to itself of K & S' accounts receivable before K & S was in default. Further, that Transamerica's failure to loan funds to it was in breach of the Indemnity Agreement and in breach of the implied covenant of good faith and fair dealing. K & S bases its tort claims on this alleged improper conduct of Transamerica.

My ruling on the summary judgment motion on each of the five counterclaims rests on whether there is a genuine issue as to the following material facts: (1) Whether K & S was in default at the time that Transamerica exercised its right to assign the accounts receivable to itself; and (2) Whether K & S was in default at the time when Transamerica exercised its discretion not to grant financial assistance. I conclude that Defendants fail to create a triable issue as to either of these material facts. Therefore, I grant the motion for summary judgment as to all five counterclaims.

### (1) *Assignment of Accounts Receivable.*

■ Under the Indemnity Agreement, Defendants assigned to Transamerica all rights in connection with any bonded contract, including any sums due under the bonded contract and all rights arising out of accounts receivable. (Compl.Ex. A, ¶ 6.) The assignment was effective upon default by K & S on an underlying bonded contract. (*Id.*) The Indemnity Agreement expressly defines default to include where "[p]rincipal fails to pay for any labor or materials when such payment is due." (*Id.,* ¶ 3C.)

Defendants allege that Transamerica prematurely activated the assignment of Defendants' accounts receivable and sums due,

thus forcing K & S into default. Transamerica argues that, at the time that Transamerica activated the assignment, K & S was in default because it had failed to pay for labor and materials when such payment was due. The question here is whether a genuine issue as to material fact exists as to whether K & S was in default at the time that Transamerica caused the transfer of K & S' accounts receivable.

In support of its argument, Transamerica attaches the affidavit of Scott G. Guest, a bond claim specialist for Transamerica. Guest states that by early March 1993, he had "received numerous claims from unpaid suppliers or subcontractors of K & S on various bonded projects." (Pl.'s Mot. Dismiss Defs.' First Am.Countercl., Ex. A ¶ 3.) As a result, Guest wrote a letter, dated March 15, 1993, referring to "unpaid bills" of Thompson Drilling Co. ($1,887.00), Cambridge Lumber, Inc. ($5,350.49), Aatronics, Inc. ($15,148.57) and Farwest Concrete Company ($4,868.33), and directing the obligee of one of the bonded projects known as the Hells Canyon Project "to make no further payments on that contract without Transamerica's express written consent." (*Id.*) As an example of the claims received, Guest attaches a copy of a letter which he received from Cambridge Lumber, Inc., dated March 2, 1993, detailing invoices on the Hells Canyon Project which were past due to Cambridge Lumber from K & S. (*Id.,* ¶ 4.) In addition, he attaches a K & S computer printout dated March 22, 1993, listing accounts payable in excess of $200,000, including "over 90–day" accounts in excess of $80,000. (*Id.,* ¶ 5.) Guest also attaches a copy of a letter from the contracting officer of the Hells Canyon Project, dated March 23, 1993, stating in effect that he had received inquiries on bills unpaid by K & S from seven companies, including Eagle Electric. (*Id.,* ¶ 6.)

In support of their argument, Defendants attach a declaration by Sandra Shepard asserting each of the four amounts shown as "unpaid bills" in Guest's letter dated March 15, 1993 to be incorrect. (Defs.' Resp. Pl.'s Mot. Dismiss, Decl. Shepard, ¶ 2.) Shepard states that the allegedly unpaid bills of Thompson Drilling Co. and Aatronics, Inc. were not due because K & S had a bona fide dispute over the amounts to be paid to these corporations. (*Id.,* ¶¶ 3 and 5.) She states that the amount allegedly unpaid to Cambridge Lumber was not due since K & S and Cambridge had modified the payment terms of their agreement. (*Id.,* ¶ 4.) Further, Shepard explains that no amount was due to Farwest Concrete because it had already been paid in full. (*Id.,* ¶ 6.)

Shepard's declaration creates a genuine issue of material fact as to whether K & S was in default at the time that Transamerica activated the assignment of accounts receivable, but only as to K & S' failure to pay amounts owed to Thompson Drilling Co., Aatronics, Inc., Cambridge Lumber or Farwest Concrete. Neither Defendants' response nor Shepard's declaration, however, addresses the K & S computer printout dated March 22, 1993 listing accounts payable to various vendors, other than the four referred to above. These accounts due totalled more than $200,000, of which in excess of $80,000 are reflected as more than ninety days overdue. Transamerica relies on this printout to support its contention that each of the five counterclaims fail to state a cause of action based on Transamerica's activation of the assignment of K & S' accounts receivable in March 1993.

The Indemnity Agreement defines default as the failure to pay for labor or materials when such payment is due. The computer printout constitutes undisputed evidence (other than with regard to the amount reflected in the printout as payable to Cambridge Lumber) that in March 1993, when Transamerica activated the assignment of accounts receivable, K & S was in default under the Indemnity Agreement. Defendants have produced no affidavits or other evidence showing a specific dispute of the fact that K & S was in default in March, 1993 due to its failure to pay the amounts due to the vendors reflected in the printout. Since Defendants fail to create a triable issue of fact that they were not in default at the time Transamerica exercised the assignment of the accounts receivable, summary judgment is appropriate as to all five counterclaims.

(2) *Refusal to Provide Financial Assistance.*

■ Transamerica argues that Defendants' claims for breach of contract and breach of the implied covenant of good faith and fair dealing must fail as a matter of law since the unambiguous terms of the Indemnity Agreement provide that, "[i]n the event of Default, as defined above, Surety may *at its option and sole discretion:* .... [l]oan such funds, guarantee a loan for such funds, as Surety shall deem necessary for completion of any Contract." (Compl., Ex. A, ¶ 4D.) (emphasis added). Transamerica asserts that, since K & S was in default on April 5, 1993 when it requested financial assistance, Transamerica had the sole discretion to refuse to extend financing. Defendants respond that Transamerica breached the Indemnity Agreement by not acceding to K & S' request because K & S was not in default.

■ I agree with Defendants that Transamerica, although vested with the "sole discretion" to provide financial assistance, was required to act in good faith in exercising its judgment. *See* 1A Arthur L. Corbin, *Corbin on Contracts* § 165 (1963); *see also Resource Management Co. v. Weston Ranch & Livestock Co.,* 706 P.2d 1028, 1037-38 (Utah 1985). However, as determined above, there is no genuine issue as to the material fact that K & S was in default as defined by the Indemnity Agreement when it requested financial assistance in April 1993. In *Lambert v. Maryland Casualty Co.,* the court found that the duty of good faith and fair dealing did not require a surety to continue advancing additional funds where the parties' agreement expressly provided that Maryland had sole discretion whether to grant or refuse plaintiffs' request for financial assistance. 418 So.2d 553, 561 (La.1982). Accordingly, Transamerica did not breach the implied covenant of good faith and fair dealing when, with K & S in default, it exercised its discretion and refused to grant K & S' financial assistance.

■ Similarly, Defendants' third and fourth counterclaims allege that Transamerica's failure to assist K & S financially in the completion of its projects constituted tortious interference with prospective advantage and intentional interference with contractual relations. An essential element of each of these torts is improper conduct that either prevents the formation of a contract between the complainant and a third party or induces the breach of an existing contract. *See Larsen v. Consolidated Pet Foods Inc. (In re S & D Foods, Inc.),* 144 B.R. 121, 165 (D.Colo.1992). Since Transamerica did not act improperly in refusing financial assistance to K & S, its conduct cannot constitute the basis for either tort.

■ In the same vein, Defendants' fifth counterclaim for intentional infliction of emotional distress requires proof that Transamerica's refusal of financial assistance constituted outrageous conduct. *Van Meter v. Van Meter,* 328 N.W.2d 497, 498 (Iowa 1983). Since Transamerica's refusal was not improper, *a fortiori,* it was not outrageous.

For these additional reasons, summary judgment is appropriate as to all five of Defendants' counterclaims.

### IV. *Conclusion.*

Based on the aforesaid, I grant Transamerica's motion to dismiss Defendants' counterclaims, treated as a motion for summary judgment. Accordingly,

IT IS ORDERED THAT Plaintiff's Motion to Dismiss Defendants' First Amended Counterclaim with Supporting Authorities is GRANTED.