997 So.2d 1212 (2008)
ANDERSEN WINDOWS, INC., a/k/a Andersen Corporation, a Minnesota Corporation, Appellant/Cross-Appellee,
v.
Joel HOCHBERG and Marcia Hochberg, his wife, Appellees/Cross-Appellants.
No. 3D07-1755.
District Court of Appeal of Florida, Third District.
December 24, 2008.
*1213 DuBosar & Perez and Ubaldo J. Perez, Jr., Boca Raton, for appellant/cross-appellee.
Ehrenstein Charbonneau Calderin, Michael D. Ehrenstein and Daniel Gold, for appellees/cross-appellants.
Before WELLS and SHEPHERD, JJ., and SCHWARTZ, Senior Judge.
WELLS, J.
Andersen Windows, Inc., a door and window manufacturer, appeals from an order interpreting and enforcing a settlement agreement between it and homeowners, Joel and Marcia Hochberg. The Hochbergs cross appeal, requesting rescission of the agreement in the event this Court does not affirm the order on appeal. We reverse the order on appeal, but find the Hochbergs' rescission request without merit.
The settlement agreement at issue here was entered following lengthy mediation of the Hochbergs' breach of warranty claims related to water intrusion through the Andersen windows and doors installed in their new home. The two-page agreement, which was hand-written by the Hochbergs' attorney at the end of mediation, was signed by the parties, approved by the circuit court, and provided that Andersen would repair, replace, and/or adjust the home's doors and windows. Additionally the parties' agreement provided:
3. Andersen will retain a water testing consultants [sic] acceptable to plaintiffs ("GCI") and will test ("water isolation test") all of the doors after the replacement and repairs set forth in 1 and 2 above to verify that all exterior doors are not leaking at Andersen's sole cost and expense.
....
9 (a). All water testing shall be a representative sample of product as determined by Bill Bonner [GCI]. The parties may utilize any other qualified representative of GCI acceptable to both parties.
(Emphasis added).
As contemplated by the agreement, Andersen made replacements, repairs, and adjustments to the windows and doors at the Hochberg home and called in GCI to perform water testing. One French door was tested. It leaked. Three windows were tested, one of which leaked. Following consultation with GCI, Andersen sought access to the home to rectify these deficiencies. When access was not forthcoming, Andersen filed a motion to enforce the settlement agreement. The Hochbergs countered, demanding that Andersen "perform additional testing on all the windows and doors to determine the depth and breadth of the problems and correct all the deficient windows and doors to prevent further water intrusion."
Following the hearing on these cross motions, the trial court concluded that the agreement required all of the doors to be tested. With regard to the windows, the trial court concluded that Bonner's decision to test only three windows was insufficient and that it would be both "fair and adequate" to require an additional five percent of the windows to be tested.
Settlement agreements are interpreted and governed by the law of contracts. Spiegel v. H. Allen Holmes, Inc., 834 So.2d 295, 297 (Fla. 4th DCA 2003); Williams v. Ingram, 605 So.2d 890, 893 *1214 (Fla. 1st DCA 1992) ("Settlement agreements are to be interpreted and governed by the law of contracts."); see Treasure Coast, Inc. v. Ludlum Constr. Co., 760 So.2d 232, 234 (Fla. 4th DCA 2000) ("Settlements are construed in accordance with the rules for interpretation of contracts."). Courts, without dispute, are not authorized to rewrite clear and unambiguous contracts. E.g., Hill v. Deering Bay Marina Ass'n, 985 So.2d 1162, 1166 (Fla. 3d DCA 2008). And where a contract is clear and unambiguous, it must be enforced as written. See Spiegel, 834 So.2d at 297; see also Gomes v. Boatarama, Inc., 963 So.2d 869, 869 (Fla. 3d DCA 2007) (reversing where trial court deviated from express terms of parties' settlement agreement); BAC Int'l Credit Corp. v. Macia, 626 So.2d 1037, 1038 (Fla. 3d DCA 1993) (concluding that a "settlement should be enforced in accordance with its terms").
As to the testing of the Hochberg home's windows, the only statement in the parties' agreement clearly and unambiguously provides that testing would be of a "representative sample ... as determined by Bill Bonner." The testimony was that Bonner determined that only four percent (or three) of the windows needed to be tested.[1] While the court below may have felt that it was better to test an additional five (for a total of nine) percent of the windows, that is not what the parties agreed to and is, therefore, outside the authority of the trial court to "enforce." Thus, the trial court erred in re-writing the parties' agreement so as to obligate the testing of more windows than the "representative sample ... as determined by Bill Bonner."[2]
As to the home's doors, the parties' agreement was ambiguous, with paragraph *1215 3 requiring the testing of all doors and paragraph 9(a) requiring testing of only a representative sample to be determined by Bonner. Andersen maintains that it was the parties' intention that 9(a) was to control, and at the end of exhaustive mediation the parties merely forgot to eliminate the earlier provision. The Hochbergs disagree.
Faced with this ambiguity regarding testing of the doors, an evidentiary hearing should have been conducted, and the conflict resolved. See Commercial Capital Res., LLC v. Giovannetti, 955 So.2d 1151, 1153 (Fla. 3d DCA 2007) (reversing an order enforcing a settlement agreement and remanding for evidentiary hearing to determine the parties' intent because the agreement was "susceptible to two different interpretations, each one of which [could] reasonably [be] inferred from the terms of the contract").
The order under review is, therefore, reversed with this matter remanded for enforcement of the settlement agreement as to the home's windows, without further testing. As to the doors, this matter is remanded for an evidentiary hearing to determine the parties' intent with regard to testing. The Hochbergs' claim for rescission is denied.
NOTES
[1] According to Andersen, GCI determined that a four percent sample was appropriate and on that basis tested three of the seventy-five windows and one of the twenty-five doors.
[2] We cannot agree with the Hochbergs' argument that in modifying the parties' agreement, the trial court did no more than imply a condition of commercial reasonableness. The Hochbergs themselves concede, "the implied covenant of good faith cannot be used to vary the terms of an express contract." Beach St. Bikes, Inc. v. Bourgett's Bike Works, Inc., 900 So.2d 697, 700 (Fla. 5th DCA 2005). Rather, as observed in Sepe v. City of Safety Harbor, 761 So.2d 1182, 1185 (Fla. 2d DCA 2000), "`the implied covenant of good faith and fair dealing is designed to protect the contracting parties' reasonable expectations.' Cox v. CSX Intermodal, Inc., 732 So.2d 1092, 1097 (Fla. 1st DCA 1999) (citing Scheck v. Burger King Corp., 798 F.Supp. 692, 693 n. 5 (S.D.Fla. 1992))." As a result, the force of this obligation varies with the context in which it arises. Id. In this case, the parties expressly left to an independent third party, GCI, the decision of how many windows to test. Thus here, no claim of a breach of the parties' reasonable expectations has been made.

The following cases as cited in Sepe, 761 So.2d at 1184 n. 2, also support this conclusion: Transamerica Premier Ins. Co. v. K & S Constr., 850 F.Supp. 930, 934 (D.Colo. 1994) (holding insurer did not breach duty of good faith by refusing to provide construction company with financial assistance where indemnity agreement vested insurer with sole discretion); Cont'l Mobile Tel. Co. v. Chicago SMSA Ltd. P'ship, 225 Ill.App.3d 317, 167 Ill.Dec. 554, 587 N.E.2d 1169, 1174 (1992) (holding cellular telephone wholesaler did not breach duty of good faith by raising rates where contract gave wholesaler sole discretion to do so at any time); Gilbert v. El Paso Co., 490 A.2d 1050, 1054-55 (Del.Ch.1984) (holding corporation did not breach duty of good faith under New Jersey Law by terminating tender offer, where contract gave corporation sole discretion to terminate if condition subsequent occurred); Riggs Nat'l Bank of Washington, D.C. v. Linch, 36 F.3d 370, 373 (4th Cir.1994) (holding implied duty of good faith could not override express promissory note provision that gave bank sole discretion to set interest rate and expressly stated variable interest rate would not necessarily be bank's lowest rate for other customers).