LAGOA, J.
KJB Village Property, LLC, and Siam Bagel, Inc. (collectively “Appellants”), appeal from an Order Granting Motion for Entry of Final Judgment and Final Judgment in Favor of Defendants Craig M. Dome P.A. and Craig M. Dome, Esq. (collectively “Dome”). For the following reasons, we affirm.
I. FACTUAL AND PROCEDURAL HISTORY
Jerome Berman (“Berman”) purchased Siam Bagel, a store located in the Shoppes of North Bay Village (“Shoppes”). When Berman purchased Siam Bagel, he took over the existing lease, which ran several *729 more years. Dome represented Berman in the purchase of Siam Bagel.
When Berman bought Siam Bagel, he believed the shopping plaza was going to be improved or updated; Shoppes, however, intended to develop the property into condominium units. On or about July of 2002, the principal of Shoppes, Scott Greenwald (“Greenwald”), introduced himself to Berman, and later offered $100,000 for Siam Bagel’s early termination of its lease. Berman refused that offer and countered with a demand for $500,000, which Greenwald did not accept. Green-wald then offered 1600 square feet of retail space in exchange for early termination of Siam Bagel’s lease, which Berman accepted. When it came time to memorialize the agreement, however, Greenwald instead offered Berman one of ten condominium units to be built on the property. Berman discussed this offer with Dome, and Ber-man ultimately agreed to accept Unit 1105.
In the course of negotiating the final agreement, Berman communicated directly with Greenwald. Counsel for Shoppes drafted the first lease termination agreement. In the process of finalizing the negotiations, Dome wrote to Shoppe’s attorney and requested a copy of the agreement for his review. Berman reviewed the multiple drafts of the Agreement exchanged between the parties, participated in the revisions to the draft, and read the final draft (at least in part) before its execution.
In the course of the negotiations, Ber-man contemplated the possibility that there could be a lien on the property when he received it. Thus, Berman negotiated that Siam would receive a condominium unit that was “free and clear” of any liens or mortgages. Dome told Berman that “marketable title” meant “free and clear,” and Berman admits he was warned by Dome that it was possible that the unit would not be delivered if the condo was never built. Despite the warning, Berman decided to go through with the deal, which included a provision requiring Shoppes to “transfer and convey fee simple marketable title in and to Unit 1105” to Siam Bagel within sixty days from the date of the certificate of occupancy. In the event Shoppes did not deliver the Unit within forty-two months of the lease termination date, Shoppes agreed to payment of $443,900.
Near the end of the forty-two months, the new owner of the property, Lexi Development (whose principal was also Greenwald) delivered a Special Warranty Deed conveying Unit 1105 to KJB Village Property LLC (an entity owned by Ber-man). This deed failed to disclose that Unit 1105 was encumbered by a construction loan mortgage. As a result of the undisclosed construction loan, Siam and KJB sued Shoppes, Lexi and Greenwald (collectively, the “Developer”) for the failure to deliver a unit free of any encumbrances and for their failure to disclose the mortgage at the time of conveyance. Appellants, however, dropped the lawsuit[1] against the Developer in part because Greenwald advised Berman that he might go into bankruptcy and “was not going to pay [Berman] a penny no matter what.”[2]
On September 25, 2009, Siam filed a complaint against Dome alleging legal malpractice. Subsequently, Dome filed a Motion for Final Summary Judgment, arguing that Appellants could not establish *730 the requisite redressable harm and proximate causation needed to prevail on its malpractice claim. The trial court subsequently granted the motion and entered an Order Granting Motion for Entry of Final Judgment and Final Judgment in Favor of Defendants. This appeal followed.[3]
II. ANALYSIS
In any legal malpractice suit, the plaintiff is required to prove: 1) the attorney’s employment; 2) the attorney’s neglect of reasonable duty; and 3) that such negligence resulted in and was the proximate cause of actual loss to the plaintiff. See Maillard v. Dowdell, 528 So.2d 512, 514 (Fla. 3d DCA 1988). If the client cannot show that it would not have suffered harm “but for” the attorney’s negligence, the client will not prevail. See, e.g., Oteiza v. Braxton, 547 So.2d 948, 949 (Fla. 3d DCA 1989) (“[A] party who has been denied his right to appeal due to an attorney’s failure to timely file a petition for review to the appropriate court must show that but for the attorney’s negligence, the appeal most probably would have been successful.”). Proximate cause may be determined as a matter of law where “the evidence supports no more than a single reasonable inference.” City of Ocala v. Graham, 864 So.2d 473, 478 (Fla. 5th DCA 2004). Moreover, “no cause of action for legal malpractice ‘should be deemed to have accrued until the existence of re-dressable harm has been established.’” Bierman v. Miller, 639 So.2d 627, 628 (Fla. 3d DCA 1994) (quoting Diaz v. Piquette, 496 So.2d 239, 240 (Fla. 3d DCA 1986)).
To prevail on a motion for summary judgment against a client in a legal malpractice action, an attorney must demonstrate that the client did not suffer re-dressable harm as result of his or her work. See Lorraine v. Grover, Ciment, Weinstein & Stauber, P.A., 467 So.2d 315, 319 (Fla. 3d DCA 1985) (holding summary judgment proper where the attorney’s alleged negligence could not have been the cause of the plaintiffs claimed loss). This can be done by showing that a court in a related proceeding construed a purportedly deficient agreement in the client’s favor (thus obviating any potential claim of harm from the attorney’s work on the agreement). See Roth v. Rosa Bros. Inc., 513 So.2d 709, 709 (Fla. 3d DCA 1987) (“[I]t could not possibly constitute legal malpractice for plaintiffs counsel to advise the plaintiff, as he did, to sign a lease which, as subsequently enforced, fully comported with the intent of the parties to the lease, including the intent of the plaintiff.”); cf. Bierman, 639 So.2d at 628 (abating an action for legal malpractice until a trial court ruled on the validity of an agreement that was allegedly drafted negligently). Alternatively, if the issues in the related suit can be decided as a matter of law, the court deciding the malpractice action can assess whether or not the lawyer’s actions precluded the client from obtaining full relief in the related action, thereby obviating any potential claim of harm as against the attorney. Cf. Oteiza, 547 So.2d at 949; Hatcher v. Roberts, 478 So.2d 1083 (Fla. 1st DCA 1985).
The interpretation of a contract is generally a matter of law. See Peacock Constr. Co. v. Modern Air Conditioning Inc., 353 So.2d 840, 842 (Fla.1977). As such, this Court can examine the agreement drafted by Dome to determine whether Appellants would have been entitled to recover against the Developer under that agreement in the underlying action. Cf. Oteiza, 547 So.2d 948; Hatcher, *731 478 So.2d 1083. If so, Appellants would not have suffered redressable harm from Dome’s action and would thus be barred from bringing a legal malpractice action.
Here, Appellants argue that the harm occurred because 1) Dome failed to include a recording provision in the agreement, and 2) Dome did not advise Siam of the risk involved in proceeding. That is, Appellants claim that this action is not precluded because the harm occurred long before the underlying action against the Developer was filed. However, because the agreement would have allowed the Appellants to recover damages from the Developer’s breach of contract up to the value of the subject property, Appellants cannot establish the requisite redressable harm from Dome’s actions.
The final agreement required delivery of “marketable title” to Unit 1105 within forty-two months of execution of the agreement or, if title was not delivered, the payment of $443,900. Under Florida law, the term “marketable title” encompasses “undisclosed liens, encumbrances, exceptions or qualifications constitute defects in the title to real property which render title unmarketable within the meaning of the standard real estate contract employed by the parties.” Bailey v. First Mortg. Corp. of Boca Raton, 478 So.2d 502, 504 (Fla. 1st DCA 1985).[4] “When words or terms having a definite legal meaning and effect are knowingly used in a written instrument, as was done in the case at bar, the parties thereto will be presumed to have intended such words or terms to have their proper legal meaning and effect, in the absence of any contrary intention appearing in the instrument.” Wilcox v. Atkins, 213 So.2d 879, 881 (Fla. 2d DCA 1968). Because the deed that was conveyed to Appellants had an undisclosed mortgage (which is an encumbrance on the property),[5] the Developer breached the agreement by not transferring “marketable title” to Appellants. See Bailey, 478 So.2d at 504 (“[A] mortgage standing undischarged of record against land sold by executory contract constitutes a defect in the vendor’s title. -”). Appellants would thus have been able to recover against the Developer had they not abandoned their earlier lawsuit against the Developer. As the proximate cause of Appellants’ harm was abandoning the lawsuit to enforce the agreement against the Developer, and not the terms drafted by Dome in the agreement, Appellants suffered no redressable harm from Dome’s work and are thus barred from pursuing an action for legal malpractice. Accordingly, we affirm the entry of final summary judgment in favor of Dome.
Affirmed.

. Appellants’ Motion for Summary Judgment against the Developer was pending at the time Appellants filed their Notice of Voluntary Dismissal.

. During his deposition, Berman testified that he did not know and had never confirmed if Greenwald was in fact in bankruptcy.

. We review a trial court’s decision granting summary judgment de novo. See Volusia Cnty. v. Aberdeen at Ormond Beach, L.P., 760 So.2d 126, 131 (Fla.2000).

. Appellant’s effort to create an issue of fact as to the meaning of the term "marketable title” through the use of expert testimony is improper. See Thundereal Corp. v. Sterling, 368 So.2d 923, 928 (Fla. 1st DCA 1979) ("Opinion testimony of expert lawyers upon legal questions, other than that as to the law of another jurisdiction, or expert or nonexpert opinion generally, that amounts to a conclusion of law, cannot be properly received in evidence, for the determination of such questions is exclusively within the province of the court.” (quoting 31 Am.Jur.2d Expert and Opinion Evidence, § 69 (1967))).

. An encumbrance “is every right to or interest in the land, which may subsist in a third party, to the diminution of the value of the land, but consistent with the passing of the fee by the conveyance.” Gore v. Gen. Props. Corp. 149 Fla. 690, 6 So.2d 837, 839-840 (1942). A mortgage is such an interest. Transcon Trailers, Inc. v. Northland Ins. Co., 436 So.2d 380, 382 (Fla. 5th DCA 1983).