DISTRICT COURT OF APPEAL OF THE STATE OF FLORIDA
FOURTH DISTRICT

**INLET COLONY, LLC,**
a Florida limited liability company,
Appellant,

v.

**WIGHT MARTINDALE, III** and **BETSY MANNING MARTINDALE,**
Appellees.

No. 4D21-2330

[June 1, 2022]

Appeal from the Circuit Court for the Fifteenth Judicial Circuit, Palm Beach County; Jaimie R. Goodman, Judge; L.T. Case No. 502020CA008512.

Tim B. Wright and Paul J. Parton of Wright, Ponsoldt & Lozeau Trial Attorneys, L.L.P., Stuart, for appellant.

James S. Telepman of Cohen, Norris, Wolmer, Ray, Telepman, Berkowitz & Cohen, North Palm Beach, for appellees.

WARNER, J.

A seller appeals a summary judgment in favor of the buyers, requiring the return of a deposit on a contract for sale of a home, which transaction did not close. The trial court determined that buyers had the right to terminate the contract and receive the refund of the deposit because the "drop dead" date of closing in the contract had passed, entitling buyers to terminate. Further, seller had not cleared the title, because seller had not obtained full discharge of a notice of lis pendens filed against the home within the time prescribed in the contract. We affirm, concluding that buyers had the right to terminate the agreement for failure to close by the "drop dead" date of the contract and also because the notice of lis pendens could not be considered discharged for purposes of obtaining clear title until the time for filing a petition for certiorari or appeal from the order of discharge expired.

Buyers and seller entered into a real estate sales contract to purchase a residence. At the time of the contract, the residence was occupied by

tenants. The contract provided for a closing date of May 1, 2020, or the date that the tenants vacated the property. In the event the closing did not occur by June 1, 2020, buyers had the right to cancel the contract and receive a full refund of the deposit. In addition, the contract contained standard provisions allowing seller a period of thirty days from the date a title defect is made known to seller to cure the title defects.

After the contract was signed, buyers delivered their deposit to the escrow agent, and seller initiated eviction proceedings against the tenants. A title commitment was delivered by the closing agent to buyers.

On May 1, 2020, the closing date in the contract, the tenants vacated the property but filed a counterclaim in the eviction proceedings seeking an equitable lien on the property. The tenants also filed a notice of lis pendens against the property. Because a notice of the lis pendens was filed, the closing did not take place.

On May 6, buyers requested an updated title commitment, and the following day, buyers sent objections to the title based upon the notice of lis pendens to the closing agent. The next day, the closing agent sent a letter to seller notifying seller of buyers' objections. The letter listed the requirements for seller to close which included a release with prejudice of the lis pendens. Seller sent a letter to the closing agent acknowledging the objection and noting that it had thirty days to cure and clear the title, or until June 8, as the thirty days would have fallen on a weekend.

Days later, the tenants released their notice of lis pendens but filed an amended notice to correct a clerical error. Seller then proceeded to seek discharge of the notice through a hearing in the eviction case, which was set for June 1. At the hearing on June 1, the court ordered the tenants to post a bond by 5:00 p.m. on June 6, a Saturday, as a condition to maintain the second notice of lis pendens. If the bond was not posted, the lis pendens would be dissolved with prejudice without further order. The tenants failed to post the required bond.

On June 8, buyers' attorney sent a letter to seller, noting that the title defect had not been cured to the satisfaction of the title insurer. The title insurer required the appeal period for the discharge of the notice of lis pendens to expire. As the title exception had not been timely cleared, buyers terminated the contract, noting also in their letter that the closing did not occur by June 1, giving buyers the right to terminate the contract.

When seller refused to return buyers' deposit, buyers filed suit for breach of contract. Seller responded and filed a counterclaim seeking to retain the deposit. Both parties filed motions for summary judgment.

The court granted buyers' motion on two grounds. First, the court determined that June 1, 2020, was a "drop-dead" date for closing (the term used by the trial court). Buyers had the right to cancel if closing did not take place, which it did not. Second, even if seller was entitled to the additional thirty days to cure title from the date of buyers' title objection, title was unmarketable on that date, and buyers had a right to cancel. From this order, seller appeals.

"A trial court's interpretation of a contract is reviewed de novo. The same standard applies to the review of the entry of summary judgment." *Nationstar Mortg. Co. v. Levine*, 216 So. 3d 711, 714 (Fla. 4th DCA 2017) (quoting *19650 NE 18th Ave. LLC v. Presidential Est. Homeowners Ass'n*, 103 So. 3d 191, 194 (Fla. 3d DCA 2012)).

## "Drop Dead" Closing Date

Seller argues that the trial court erred in determining that June 1, 2020, was a "drop dead" date on which buyers had the right to cancel. The parties signed a standard Florida Bar/Florida Realtors approved contract containing the following section regarding closing:

> 4. CLOSING DATE: Unless modified by other provisions of this Contract, the closing of this transaction shall occur and the closing documents required to be furnished by each party pursuant to this Contract shall be delivered ("Closing") on [date crossed out] ("Closing Date"), at the time established by the Closing Agent.

Handwritten directly underneath this paragraph it stated, "*See addendum with additional closing date items." The addendum contained the specific closing date and "drop dead" date:

> Seller and Buyer make the following terms and conditions part of the Contract; Closing will occur [the] later of tenants vacating the property or May 1st, 2020. In the event closing does not take place by June 1st, Buyer can cancel contract and received (sic) the full refundable escrow deposit of monies paid by the Buyer.

3

Seller contends that section 4 of the standard provisions allowed the closing date set forth in the addendum to be modified by permitting the inclusion of a cure period for title defects[1], thus extending the "drop dead" date. We disagree that this is a reasonable interpretation of the contract. The addendum itself states that its terms and conditions are "part of the Contract[.]" As such, the addendum is modifying the terms of the contract with respect to section 4 dealing with the closing to set the closing as "the later of tenants vacating the property or May 1, 2020." Buyers are given the ability to cancel the contract and receive the deposit back "[i]n the event closing does not take place by June 1st." The parties made clear that June 1 was to be the final deadline because they entered into an addendum rather than including the closing date in section four of the contract.

"Courts, without dispute, are not authorized to rewrite clear and unambiguous contracts." *Anderson Windows, Inc. v. Hochberg*, 997 So. 2d 1212, 1214 (Fla. 3d DCA 2008) (citation omitted). "And where a contract is clear and unambiguous, it must be enforced as written." *Id.* (citations omitted). "In construing a contract, the court should consider its plain language and take care not to give the contract any meaning beyond that expressed." *Walker v. State Farm Fire & Cas. Co.*, 758 So. 2d 1161, 1162 (Fla 4th DCA 2000) (citing *Walgreen Co. v. Habitat Dev. Corp.*, 655 So. 2d 164, 165 (Fla. 3d DCA 1995)). "When the language is clear and unambiguous, it must be construed to mean 'just what the language therein implies and nothing more.'" *Id.* (quoting *Walgreen*, 655 So. 2d at 165).

Here, the contract provides that if the sale does not close by June 1, 2020, buyers could terminate the contract and get their deposit back. The contract does not provide for contingencies for seller to extend that date. Moreover, section 18(R) of the contract provides that addenda to the contract control over printed portions of the contract if there is a conflict between them. Accordingly, the trial court did not err in determining that June 1 was the "drop dead" closing deadline.

Alternatively, seller contends that material issues of fact remain regarding its affirmative defenses of waiver and estoppel. Seller contends that buyers, through their silence, accepted the time to cure the lis pendens defect which would extend the closing date to June 8, 2020, thus waiving buyers' right to insist on the June 1 "drop dead" date. As to waiver, however, section 18(P) of the contract provides that "[n]o

---

[1] Section 18.A(ii) provides seller with thirty days to cure after receipt of a buyer's notice of defects that render title unmarketable.

4

modification to or change in this Contract shall be valid or binding upon Buyer or Seller unless in writing and executed by the parties intended to be bound by it." This is consistent with the requirements of the Statute of Frauds. *See* § 725.01, Fla. Stat. (2020) ("No action shall be brought whereby . . . to charge any person . . . upon any contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them . . . unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized."). No writing modified the document signed by buyers. Therefore, seller's waiver affirmative defense fails. *See Bradley v. Sanchez*, 943 So. 2d 218, 222 (Fla. 3d DCA 2006); *see also Rybovich Boat Works, Inc. v. Atkins*, 587 So. 2d 519, 521–22 (Fla. 4th DCA 1991) (finding where contract contained an anti-waiver provision that the relevant provision could not have been waived unless there was a writing signed by the party against whom the waiver was asserted).

Likewise, seller's estoppel argument fails as a matter of law. The Statute of Frauds does not contain an estoppel exception. *See DK Arena, Inc. v. EB Acquisitions I, LLC*, 112 So. 3d 85 (Fla. 2013); *see also Wharfside at Boca Pointe, Inc. v. Superior Bank*, 741 So. 2d 542 (Fla. 4th DCA 1999). The trial court was correct in determining that buyers had the right to terminate and demand the return of the deposit after the transaction failed to close on June 1, 2020.

**Order Discharging Lis Pendens**

As a second ground for granting summary judgment to buyers for the return of their deposit, the trial court determined that a cloud remained on the title which was not cleared even by the extended date of closing relied on by seller. We find that because the order discharging the lis pendens was still subject to review by the appellate court until the appeal time passed, the lis pendens continued to be a cloud on the title on June 8, 2020, the closing date on which seller demanded that buyers close or forfeit the deposit.

The parties' contract provided in section 18(H) that the "[s]eller shall convey marketable title to the Real Property by statutory warranty . . . deed . . . subject only to matters described in STANDARD A and those accepted by [b]uyer." "Marketable title" has been defined as "one that is clear and free from reasonable doubt . . . . a title *unencumbered* and free from reasonable doubt as to any question of law or fact necessary to sustain its validity." *Bailey v. First Mortg. Corp. of Boca Raton*, 478 So. 2d 502, 504

5

(Fla. 1st DCA 1985) (quoting 44 Fla. Jur. 2d. Real Property Sales and Exchanges § 82 (1984)).

Section 48.23, Florida Statutes (2020) controls the discharge of a lis pendens. It provides:

> (1)(a) An action in any of the state or federal courts in this state operates as a lis pendens on any real . . . property involved therein or to be affected thereby only if a notice of lis pendens is recorded . . . and such notice has not expired pursuant to subsection (2) or been withdrawn or discharged.
>
> (b)1. An action that is filed for specific performance or that is not based on a duly recorded instrument has no effect, except as between the parties to the proceeding, on the title to, or on any lien upon, the real . . . property unless a notice of lis pendens has been recorded and has not expired or been withdrawn or discharged.
>
> 2. Any person acquiring for value an interest in, or lien upon, the real or personal property during the pendency of an action described in subparagraph 1., other than a party to the proceeding . . . shall take such interest or lien exempt from all claims against the property that were filed in such action by the party who failed to record a notice of lis pendens or whose notice expired or was withdrawn or discharged, and from any judgment entered in the proceeding, notwithstanding the provisions of s. 695.01, as if such person had no actual or constructive notice of the proceeding or of the claims made therein or the documents forming the causes of action against the property in the proceeding.
>
>    . . . .
>
> (3) When the pending pleading does not show that the action is founded on a duly recorded instrument or on a lien claimed under part I of chapter 713 or when the action no longer affects the subject property, the court shall control and discharge the recorded notice of lis pendens as the court would grant and dissolve injunctions.

The statute thus provides that the lis pendens will not constitute a lien against property when it has expired, been withdrawn, or discharged,

6

which discharge is controlled by the court as it would "grant and dissolve injunctions."

Seller contends that section 48.23(1)(b)2. does not include the time for an appeal in determining the time when the safe harbor commences for a purchaser for value to take free and clear of the notice of lis pendens. We disagree with seller's position that the safe harbor provision provided buyer with protection and clear title immediately upon the failure of the tenant to post the bond pursuant to the court order without awaiting the time for appeal to expire.

Section 48.23(1)(b)2. was adopted to prevent a lis pendens from continuing to be a cloud on title for a purchaser for value after it is discharged. *See* Gerald F. Richman & Mark A. Romance, *Specific Performance of Real Estate Contracts: Legal Blackmail*, 72 Fla. Bar J. 54 (Nov. 1998). We conclude that including the time for an appeal to expire on an order discharging a notice of lis pendens is not contrary to the terms of the statute. Section 48.23(3) provides that discharge is in the control of the court "as the court would grant and dissolve injunctions." Because the court controls the discharge, the matter is governed by court procedural rules and procedural rights due to litigants, including the important right to seek appellate review. Until such orders on a lis pendens become "final" by way of the expiration of the time for appeal, or, after appeal, a final judicial ruling, the lis pendens remains a cloud on title.

A party can seek appellate review of an order discharging a notice of lis pendens within thirty days of its rendition. *See* Fla. R. App. P. 9.100(c)(1); 9.130(b); *Cooper Vill., Inc. v. Moretti*, 383 So. 2d 705, 705–06 (Fla. 4th DCA 1980) (reviewing order denying motion to discharge notice of lis pendens by certiorari); *Angler's Reef Property Owners' Ass'n v. Guirm Inv. LLC*, 196 So. 3d 507, 509 (Fla. 3d DCA 2016) (reviewing order discharging notice of lis pendens as a non-final appealable order). Because the order in this case was subject to review by notice of appeal or petition for certiorari filed within thirty days, the order did not immediately remove the cloud on the title. *Cf. Gold v. Wolkowitz*, 430 So. 2d 556 (Fla. 3d DCA 1983) (appeal of foreclosure judgment was a cloud on title which should have been revealed to purchaser). Just as temporary injunctions and motions to dissolve them are subject to appeal and could be reversed, so too availability of appellate review of an order discharging a notice of lis pendens would continue to be a cloud on the title to the property until the expiration of the period of time for appeal.

That the order of discharge continued to be a cloud on title until the appeal period ran was also the position of the title insurer in this case. In his deposition, the attorney for the underwriter testified that the order of discharge was appealable and that the company could not rely on the order of discharge as final on the issue until the appeal time had run. A provision of the contract required a title insurance policy to be issued with only particular exceptions, none of which would allow for an exception for the tenant's notice of lis pendens in this case.

Thus, the order of discharge would be considered a cloud on the title until the appeal time ran. Even without the "drop dead" date of the contract, the title would not have been cured by June 8, and buyers would have had the option of terminating the contract for failure to obtain marketable, insurable title under the contract terms.

## Conclusion

The trial court correctly ruled that buyers properly terminated the sales contract after the transaction did not close on the final closing date set forth in the contract. Further, even without the "drop dead" closing date, a cloud remained on the title which was not cleared by the date claimed by seller to be the closing date. The order discharging the lis pendens was subject to review in the appellate court as the time for appeal had not run. Thus, the lis pendens continued to constitute a cloud on the title of the property, also allowing buyers to terminate the contract. For these reasons, we affirm the trial court's order.

*Affirmed.*

MAY and CIKLIN, JJ., concur.

\* \* \*

***Not final until disposition of timely filed motion for rehearing.***

8