741 So.2d 542 (1999)
WHARFSIDE AT BOCA POINTE, INC., a Florida corporation, Appellant,
v.
SUPERIOR BANK, a federal savings bank; and National Loan Investors, L.P., a Delaware limited partnership, Appellees.
No. 97-3474.
District Court of Appeal of Florida, Fourth District.
July 7, 1999.
Rehearing Denied October 12, 1999.
*543 Philip M. Burlington of the Law Office of Caruso, Burlington, Bohn & Compiani, P.A., West Palm Beach, for appellant.
Daniel S. Pearson and Scott B. Newman of the Law Offices of Holland & Knight LLP, West Palm Beach, and James K. Gardner of the Law Office of Neal, Gerber & Eisenberg, Chicago, for appellee Superior Bank.
George A. Vaka of the Law Office of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee National Loan Investors.
PER CURIAM.
Wharfside at Boca Pointe, Inc. ("Wharfside") appeals two final summary judgments, entered in favor of Superior Bank ("Superior") and National Loan Investors ("NLI"). We affirm.
Wharfside at Boca Pointe ("Project") is a commercial real estate project in Palm Beach County, Florida. In 1984 Wharfside borrowed money from Superior's predecessor, Lyons Savings and Loan Association ("Lyons"), the original construction lender for the Project. At that time, Wharfside, Lyons, and the principal contractor on the project, Inryco Construction ("Inryco"), were involved in extensive litigation regarding the project. In November of 1990, they entered into a settlement agreement, wherein they agreed to market and sell the Project to a third-party purchaser and distribute the net sales proceeds according to their percentage of ownership interests.
On December 30, 1992, Superior and Wharfside entered into a Purchase and Sale Agreement ("Purchase Agreement"), wherein Wharfside agreed to purchase Superior's 70% interest in the Project for $3.1 million dollars. The transaction was scheduled to close by March 30, 1993. Wharfside failed to close on that date. The parties began discussions about extending the closing date but never reached an agreement for extension.
Thereafter, Superior initiated the process of selling a large number of the assets in its loan portfolio, including Wharfside, through a sealed bid auction. On February 4, 1994, Fred Frankel, Wharfside's principal, wrote a letter to Superior's asset liquidation consultant, Tom Merriott, to express his opposition to the inclusion of the Project in the auction pool and to make an offer to purchase Superior's interest in the Project for $1.6 million. In its response letter, dated February 7, Superior rejected Wharfside's reduced offer. Subsequently, *544 Superior assigned its interest in the Project to NLI, the successful bidder at the auction.
A few months later, Wharfside filed a complaint against Superior, asserting claims of breach of contract, fraud, tortious interference and conspiracy. According to the complaint, Wharfside and Superior reached an oral agreement during a telephone conversation on February 4, 1994 between Merriott and Frankel, which provided for a reduced purchase price of $1.6 million for Superior's interest in the Project and extended the closing date until completion of repairs to the Project. Later Wharfside amended the complaint, adding NLI as a defendant and seeking specific performance of the oral agreement which purportedly modified the Purchase and Sale Agreement.
Superior and NLI asserted the statute of frauds as an affirmative defense and moved for summary judgment. The trial court denied the motion, finding that the doctrine of partial performance removed the case from the statute of frauds. Subsequently, in August of 1996, Wharfside voluntarily dismissed the specific performance count of the amended complaint. Based on this change of circumstances, Superior and NLI moved for partial summary judgment on the ground that the counts for breach of oral contract and fraudulent inducement were barred by the statute of frauds. This time, the trial court granted the motion, reasoning that the dismissal of the specific performance count converted the action to one solely for damages, thereby rendering the part performance exception to the statute of frauds inapplicable. Accordingly, the court held that Wharfside's claims for breach of oral contract and fraud were barred by the statute of frauds.
Wharfside contends that the statute of frauds does not apply because the agreement does not involve an interest in real estate, but, rather, relates only to intangible personal property contract rights. Essentially, Wharfside argues that the contract at issue in this case, which is the Purchase Agreement between Superior and Wharfside, and its oral modification, did not constitute a contract for the sale of real property, because it did not involve the transfer of title between those parties. Wharfside describes Florida as a lien theory jurisdiction and cites several cases holding that unless a contract contains a provision for the transfer of title to the real property between the parties to the contract, it is not an agreement subject to the statute of frauds.[1] According to Wharfside, the Purchase Agreement herein did not involve the transfer of title, since title to the property, at all relevant times, was in the name of Wharfside at Boca Pointe, Inc. and never in the name of Superior Bank. Thus, the subject matter of the Purchase Agreement was not the sale of real property or any interest therein, but rather the sale of an "intangible property right" not governed by section 725.01, Florida Statutes.
An analysis of the subject matter of the Purchase Agreement and alleged oral modification does not lead us to a clear and absolute characterization of the interest being transferred. Although couched initially in terms of a sale of "all of the seller's right, title, and interest in, to and under the Loan Documents and Settlement Agreement along with all of its obligations, liabilities, duties and responsibilities thereunder" for the sum of $3.1 million, the Purchase Agreement of December 30, 1992 is essentially one for the sale of the seller's interests as a lender and foreclosing mortgagee in real property, *545 i.e., the shopping center, which was the subject of the foreclosure action that was settled by the earlier Settlement Agreement. The principal, if not the only, rights of Superior under the "Loan Documents" and "Settlement Agreement", referred to in the initial description of the sale agreement, are the lender's interest as the foreclosing mortgagee in that real property.
While Superior had certain intangible, personal property rights under the Settlement Agreement and the Purchase Agreement, the primary interest that it agreed to sell was its rights in the real property. Superior could not have performed the Settlement Agreement or the Purchase Agreement without transferring its interest in the real property. Hence, the December 1992 Purchase Agreement appears to fall within the language of section 725.01, Florida Statutes, governing an agreement to sell an interest concerning real property. Section 725.01 provides:
"No action shall be brought whereby to charge any ... person ... upon any contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them." (emphasis supplied)
Superior argues, however, that whether its interest is real or personal property is of no consequence to the outcome in this case. If Superior's interest is real property, the alleged oral modification to reduce the sale price from $3.1 million to $1.6 million sued upon is barred by the specific language of section 725.01. If Superior's interest in the Project consisted only of intangible personal property contract rights, as Wharfside suggests, then the alleged oral agreement is barred by the general statute of frauds found in section 671.206 of the Florida version of the Uniform Commercial Code. Section 671.206, Florida Statutes states:
(1) [A] contract for the sale of personal property is not enforceable by way of action or defense beyond $5,000 in amount or value of remedy unless there is some writing which indicates that a contract for sale has been made between the parties at a defined or stated price, reasonably identifies the subject matter, and is signed by the party against whom enforcement is sought or by her or his authorized agent.
If Superior's interest in the Purchase Agreement is an intangible personal property right, the agreement was required to be in writing. An agreement that is required by the statute of frauds to be in writing cannot be orally modified. United of Omaha Life Ins. Co. v. Nob Hill Assocs., 450 So.2d 536 (Fla. 3d DCA 1984) (citing Affordable Homes, Inc. v. Devil's Run, Ltd., 408 So.2d 679 (Fla. 1st DCA 1982)); 11 Fla. Jur.2d Contracts § 160 (1979).
Regardless of the label we place upon the interest Superior transferred, the attempted oral modification of the Purchase Agreement by way of the February 4, 1994 letter is insufficient to satisfy the requirements of either statute of frauds, because by its express terms it was only an offer or a confirmation of a previous oral offer to reduce the sales price, not an acceptance or a confirmation of an agreement signed by the party to be charged, Superior Bank.
Wharfside also argues that the agreement is not rendered unenforceable by the statute of frauds doctrine because the partial performance exception applies in this case.[2] We disagree with appellant. The doctrine of part performance to excuse a failure to comply with the statute of frauds is not available in Florida to actions solely for money damages. Hospital Corp. of Am. v. Associates in Adolescent Psychiatry, *546 605 So.2d 556 (Fla. 4th DCA 1992). It is true that this case began as an action for both specific performance and breach of contract. Even assuming that the dictum in Hospital Corp.[3] states a recognizable exception to the general rule that the doctrine of part performance is unavailable in actions for damages, and we expressly refrain from holding that such an exception is recognized under Florida law, the facts and circumstance of this case are not sufficient to warrant the application of any such exception.
AFFIRMED.
WARNER, C.J., TAYLOR, J. and SCHACK, LARRY, Associate Judge, concur.
NOTES
[1] Russell v. Thielen, 82 So.2d 143 (Fla.1955); Blynn v. Hirsch, 124 So.2d 314 (Fla. 3d DCA 1960); Martyn v. First Fed. Sav. & Loan Ass'n of West Palm Beach, 257 So.2d 576 (Fla. 4th DCA 1971); Olsen v. O'Connell, 466 So.2d 352 (Fla. 2d DCA 1985); Green v. New Trend Dev. Corp., 456 So.2d 589 (Fla. 3d DCA 1984); Palm Orange Groves v. Yelvington, 41 So.2d 883 (Fla.1949); Devlin v. The Phoenix, Inc., 471 So.2d 93 (Fla. 5th DCA 1985); Bird Lakes Dev. Corp. v. Meruelo, 626 So.2d 234 (Fla. 3d DCA 1993).
[2] Wharfside asserts that it spent considerable amounts of money, time, and effort on the Project while the Purchase Agreement was pending: it maintained an onsite staff, funded its payroll, engaged in a marketing program to lease space and spent substantial funds to make repairs and improvements on the property.
[3] We stated in Hospital Corp.:

In Elliott v. Timmons, 519 So.2d 671 (Fla. 1st DCA 1988), the court again reiterated that partial performance would take a contract out of the bar of the statute of frauds, citing [W.B.D., Inc. v. Howard Johnson Co., 382 So.2d 1323 (Fla. 1st DCA 1980)], and [Futch v. Head, 511 So.2d 314 (Fla. 1st DCA 1987)]. However, the Elliott case had started out as a claim in equity for specific performance to which the partial performance doctrine would apply but was converted to an action for damages during the lawsuit because of the sale of the property which was the subject of the suit. It may be in such a case that the doctrine of part performance would still be applicable."
605 So.2d at 558 (emphasis supplied). This construction of the first district has never been adopted by the fourth district.