LAWSON, J.
 

 In this consolidated appeal, the City of Orlando and Orange County, Florida, defendants below, timely challenge a summary final judgment ordering them to hon- or the terms of a purported contract to provide reclaimed water at no charge, for twenty years, to West Orange Country Club, plaintiff below. Because the purported contract was not approved by the governing boards of either Defendant, and was never signed by them, we find that the trial court erred in ordering specific enforcement of the agreement. As argued by Defendants, below and on appeal, enforcement of the agreement is barred by the statute of frauds. The trial court rejected the statute of frauds defense, finding that Defendants were estopped from denying the contract. However, the doctrine of promissory estoppel cannot be used to circumvent the statute of frauds.
 

 Facts
 

 Water Conserv II is a water reclamation project owned jointly by Defendants. The project was created in response to a judgment entered against Defendants, which required them to stop discharging water from their respective waste treatment facilities into Shingle Creek. As a result of the adverse judgment, Defendants jointly developed a plan to upgrade their facilities to produce reclaimed water and then discharge the water for agricultural irrigation or to a rapid infiltration basin in west Orange County and southeast Lake County. As a result of the creation of the Water Conserv II project, Defendants were looking for new customers to receive the reclaimed water and were willing to provide the water free of charge. Some of the Defendants’ customers entered into long-term contracts for the receipt of specific quantities of reclaimed water, at no cost. Other customers accepted the free water without a long-term contract.
 

 Plaintiff owns and operates a country club and golf course located in west Orange County. As of December 1997, Plaintiff utilized its own ground water sys
 
 *1270
 
 tem to irrigate its golf course under a consumptive use permit from the St. John’s River Water Management District, (“SJRWMD”). In December 1997, Defendants contacted Plaintiff to discuss Plaintiff switching to the Water Conserv II system and receiving reclaimed water for irrigation.
 

 To receive reclaimed water from the Water Conserv II system, Plaintiff needed to modify its water distribution system by installing a booster pump station, changing the drainage system currently in use, and installing pipelines to connect the station to the existing irrigation system and the Water Conserv II system. Additionally, to provide reclaimed water to Plaintiff, Defendants needed to design and construct a “turnout” from the Water Conserv II system to the edge of Plaintiffs property.
 

 As a result of the discussions between the parties, Defendants drafted a Water Conserv II Agreement for Plaintiff, which required Plaintiff to accept at least 75 million gallons of reclaimed water per year for twenty years, which Defendants agreed to provide, at no charge, for the term of the contract. Plaintiff executed the agreement on March 15, 1999, and delivered it to a project manager for the Water Con-serv II Project. Plaintiff also applied for and was granted a permit from SJRWMD allowing it to use reclaimed water from the Conserv II system; however, the permit limited Plaintiffs use to 48.68 million gallons per year, an amount significantly less than that contained in the contract it had signed. The contract was never approved by the governing boards of either Defendant, and was never signed on behalf of either Defendant.
 

 The parties did, however, construct the water systems necessary for Defendants to provide, and Plaintiff to accept, reclaimed water from the Conserv II system. Plaintiff sought and received financial assistance from SJRWMD to aid in the construction of a new irrigation system that was compatible with the Defendants’ reclaimed water system. In total, Plaintiff spent approximately $50,000, which was matched by $50,000 from SJRWMD, to construct its distribution system. The modifications to Plaintiffs system were constructed and completed in 1999. Defendants also spent about $100,000 to design and build the “turnout,” a structure consisting of piping, valves, meters and instrumentation necessary to deliver reclaimed water from the Water Conserv II system to Plaintiff. The turnout was completed, and reclaimed water was first supplied to Plaintiff in April 2000. Plaintiff accepted 46,809,000 gallons of reclaimed water that year, and has never accepted close to the 75 million gallons set forth in the unexecuted contract in any subsequent year.
 

 In 2005, Orange County’s Board of County Commissioners passed a resolution adopting water rates to be charged to customers who had been receiving free water through the Conserv II system. On November 14, 2005, the Orlando City Council approved the same rates previously adopted by the Board. Defendants then informed customers that they would begin charging all customers for reclaimed water beginning January 1, 2006, with an exception for customers with whom they had executed long-term supply contracts. Defendants notified Plaintiff that because its contract had never been approved or executed, it would be required to pay 43 cents per 1,000 gallons for reclaimed water beginning in 2006.
 

 Plaintiff then brought suit against Defendants, seeking to force them to provide reclaimed water at no charge, pursuant to the terms of the contract which it had signed, but which Defendants had not signed. Plaintiff also sought to revert to
 
 *1271
 
 its old groundwater system. However, SJRWMD denied Plaintiffs groundwater permit in a final order entered November 28, 2006. The permit was denied, in part, based upon SJRWMD’s determination that it was economically feasible for Plaintiff to pay for reclaimed water at the rates approved by Defendants. As a consequence, Plaintiff is now forced to use water from the Conserv II system.
 

 The litigation concluded after both sides agreed that there were no material factual disputes, and that the case should be decided on summary judgment. Defendants argued that the statute of frauds barred enforcement of the contract as a matter of law. The trial court rejected this argument, and instead found that Defendants were estopped from denying the terms of the contract, based upon Plaintiffs expenditure of $50,000 to modify its system in reliance on the promise of free reclaimed water for twenty years, as set forth in the contract. This appeal followed.
 

 Analysis
 

 Section 725.01, Florida Statutes (2007), sets forth Florida’s Statute of Frauds as follows:
 

 725.01. Promise to pay another’s debt, etc.
 

 No action shall be brought ... upon any agreement that is not to be performed within the space of 1 year from the making thereof ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.
 

 Here, it is undisputed that Plaintiff seeks to enforce a contract that called for performance for more than a year, and which was not signed by or on behalf of either party which Plaintiff seeks to hold liable for performance. Therefore, the statute of frauds plainly bars enforcement of the contract.
 
 Id.
 
 With respect to the trial court’s determination that the Defendants can be held liable for performance of the contract under an estoppel theory, the law is well-settled that “[t]he doctrine of promissory estoppel cannot be used to circumvent the statute of frauds.”
 
 Harris v. School Bd. of Duval County,
 
 921 So.2d 725, n. 9
 
 ( Osteopathic Hosp., Inc.,
 
 190 So.2d 777, 778-79 (Fla.1966));
 
 see also Coral Way Properties, Ltd. v. Roses,
 
 565 So.2d 372, 374 (Fla. 3d DCA 1990);
 
 LynkUs Communications, Inc. v. WebMD Coip.,
 
 965 So.2d 1161, 1167 (Fla. 2d DCA 2007). The sole case relied upon by the trial court as the basis for application of an estoppel theory,
 
 Killearn Properties, Inc. v. City of Tallahassee,
 
 366 So.2d 172 (Fla. 1st DCA 1979), involved enforcement of a contract signed by the party to be charged, and did not involve the statute of frauds. The case has no application here, where enforcement of the contract is barred by the plain language of section 725.01.
 

 We have considered, but decline to apply in this case, the “tipsy coachman” doctrine, whose parameters the supreme court expressed in
 
 Dade County School Board v. Radio Station, WQBA,
 
 731 So.2d 638 (Fla.1999). Plaintiff argues that we should apply the doctrine and find that the parties’ partial performance of the written contract: (1) rendered Defendants’ signatures unnecessary;
 
 [1]
 
 and (2) created an
 
 *1272
 
 exception to the statute of frauds.
 
 [2]
 
 There are a number of problems with Plaintiffs argument.
 

 First, the parties’ “performance” in this case differed materially from the terms of the written document that Plaintiff seeks to enforce. Most significantly, the amount of reclaimed water accepted by Plaintiff was not even close to the amount set forth in the contract. Therefore, it would be hard to conclude that the actions of the parties demonstrated the parties’ mutual agreement, or assent, to the terms of the document. In fact, it is unclear how the “performance” in this case would have differed from that of the Defendants and any customer who connected with the Water Conserv II system without a long-term contract. Presumably, the same types of expenditures would have been required by and on behalf of any entity or person who connected to the Water Conserv II system, irrespective of whether it had entered a long-term contract.
 

 Second, “one of the most firmly established principles of the law of specific performance is that the court will not make a new or different contract for the parties ... [and] will compel the performance of a contract only in the precise terms agreed upon by the parties themselves.”
 
 Giehler v. Ward,
 
 77 So.2d 452, 453 (Fla.1955). It would violate this principle to order Defendants to supply reclaimed water at no charge for the term of the agreement, but in quantities materially different than that required by the agreement.
 

 Third, we are not convinced that the part performance exception should ever be applied to a case like this, where one party attempts to use “performance” for a shorter duration to bind another to continued performance of an alleged oral agreement for years into the future. As explained in
 
 Collier,
 
 “If Florida is to move toward enforcing oral promises intended to be performed beyond one year, or towards compensating those who enter into such agreements, it is the proper function of the Florida Legislature to announce that public policy change, not the function of a district court of appeal.”
 
 See also,
 
 Restatement (Second) of Contracts, § 130 at comment e (“Part performance not amounting to full performance on one side does not in general take a contract out of the one-year provision.”).
 

 Finally, sovereign immunity would appear to serve as an independent bar to enforcement of a purported contract against a governmental entity that was never approved by that entity. As explained in
 
 Pan-Am Tobacco Corp. v. Department of Corrections,
 
 471 So.2d 4, 4 (Fla.1984), “[i]n Florida, sovereign immunity is the rule, rather than the exception .... ” Although the Legislature has explicitly waived sovereign immunity in tort for personal injury, wrongful death, and loss or injury of property,
 
 [3]
 
 it has not done so for contract claims. Rather, in
 
 Pan-Am,
 
 the Florida Supreme Court found an implied waiver of sovereign immunity in contract on the premise that because the Legislature authorized state entities to enter into contracts, it must have intended
 
 *1273
 
 those contracts to be valid and binding on both parties. In recognizing this exception, however, the court cautioned that the waiver of sovereign immunity was “applicable only to suits on express, written contracts into which the state agency has statutory authority to enter.”
 
 Id.
 
 at 6. It seems axiomatic that this waiver only applies if the written contract is properly approved by or on behalf of the governmental entity sought to be held liable for performance of the contact.
 
 Cf Franken-muth Mut. Ins. Co. v. Magaha,
 
 769 So.2d 1012 (Fla.2000) (holding that contract entered by county comptroller could not bind county unless also approved by the board of county commissioners);
 
 County of Bre-vard v. Miorelli Eng’g, Inc.,
 
 703 So.2d 1049, 1051 (Fla.1997) (“One final point must be addressed. MEI asserts that the County waived the written change order requirement by directing work changes without following its own formalities. We decline to hold that the doctrines .of waiver and estoppel can be used to defeat the express terms of the contract. Otherwise, the requirement of
 
 Pan-Am
 
 that there first be an express written contract before there can be a waiver of sovereign immunity would be an empty one. An unscrupulous or careless government employee could alter or waive the terms of the written agreement, thereby leaving the sovereign with potentially unlimited liability.”);
 
 Broward County v. Conner,
 
 660 So.2d 288 (Fla. 4th DCA 1995) (holding county attorney “could not bind the county to specific performance of [a] contract in the absence of proper commission approval”);
 
 Town of Indian River Shores v. Coll,
 
 378 So.2d 53 (Fla. 4th DCA 1979) (holding contract entered by mayor was ultra vires and unenforceable against city when not properly approved by city council).
 

 Declining to uphold the order on grounds not stated by the trial court, and finding that estoppel could not be used to circumvent the statute of frauds, we reverse the order on appeal and remand for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 GRIFFIN and COHEN, JJ., concur.
 

 [1]
 

 .
 
 See, e.g., Integrated Health Servs. of Green Briar, Inc. v. Lopez-Silvero,
 
 827 So.2d 338 (Fla. 3d DCA 2002) (holding that a contract may be binding on a party despite the absence of a party’s signature as the object of a signature is to show mutuality or assent, but these facts may be shown in other ways, including by the acts or conduct of the parties);
 
 Sosa v. Shearform Mfg.,
 
 784 So.2d 609 (Fla. 5th DCA 2001) (recognizing parties who do not sign a
 
 *1272
 
 contract may be bound by the provisions of the contract, if the evidence supports that they acted as if the provisions of the contract were in force).
 

 [2]
 

 . See Collier v. Brooks,
 
 632 So.2d 149 (Fla. 1st DCA 1994) (explaining that Florida’s supreme court created a "partial performance” exception to the statute of frauds, applicable when the court is acting in equity, to prevent the statute of frauds from being used as " 'an instrument of fraud.’ ”) (quoting
 
 Chabot v. Winter Park Co.,
 
 34 Fla. 258, 15 So. 756, 759 (1894)).
 

 [3]
 

 .
 
 See
 
 section 768.28, Fla. Stat. (2007).