QUINCE, J.
Florida’s Statute of Frauds provides that all contracts for the sale of land must be memorialized in a written document signed by the parties to the contract or their lawful representatives. See § 725.01, Fla. Stat. (2012). Nearly fifty years ago, in Tanenbaum v. Biscayne Osteopathic Hospital, Inc., 190 So.2d 777, 779 (Fla.1966), this Court held that the doctrine of “promissory estoppel” is not an exception to the Statute’s requirements under Florida law. In this action, petitioner DK Arena, Inc. seeks review of the decision of the Fourth District Court of Appeal in DK Arena, Inc. v. EB Acquisitions I, LLC, 31 So.3d 313 (Fla. 4th DCA 2010), in which the district court held that an oral agreement to modify the parties’ contract for *87 the sale of real property was valid and enforceable, notwithstanding the Statute of Frauds, under “the doctrine of estoppel.” Id. at 322.
We have jurisdiction. See art. V, § 3(b)(3), Fla. Const.[1] For the reasons set forth below, we quash the decision of the Fourth District in DK Arena to the extent that it is inconsistent with this opinion and remand the case to the district court for further proceedings.
FACTS AND PROCEDURAL HISTORY
The dispute in this case centers on a contract for the sale of real property known as the Mangonia Park Jai Alai Fronton, located in Mangonia Park, Florida. In July 2004, EB Acquisitions I, LLC (“EB”), the respondent in this case, agreed to purchase the fronton property from petitioner DK Arena, Inc. (“DK Arena”). When the deal collapsed, DK Arena filed suit against EB in circuit court in Palm Beach County. In response, EB asserted several counterclaims. Following a bench trial on November 10, 2008, the trial court issued a final judgment finding in favor of EB on all claims. DK Arena appealed the final judgment to the Fourth District, which affirmed in part and reversed in part. See DK Arena, 31 So.3d at 316. This Court granted review of the Fourth District’s decision. See DK Arena, Inc. v. EB Acquisitions, LLC, 47 So.3d 1288 (Fla.2010) (table).
Background
The facts of the case, as presented at trial, are as follows. In 2004, the fronton property belonged to petitioner DK Arena, Inc., a Delaware corporation wholly owned by celebrity boxing promoter, Don King. King originally acquired the property in 1999 with the intent of converting it into a boxing arena. When that use was found to be infeasible, the property was made available for sale. The property included a Tri-Rail station operated through a lease to the South Florida Regional Transit Authority. John Markey, CEO of EB Developers, a now-defunct development firm, was made aware of the property’s availability during a meeting with a member of the Transit Authority’s board of directors. Markey determined that the site would be suitable for a mixed-use commercial and residential development that would incorporate the existing Tri-Rail station. Mar-key was introduced to King, who agreed to sell the property. Markey formed respondent, EB Acquisitions I, LLC, to facilitate the purchase.
On July 20, 2004, EB entered into a written contract with DK Arena in which EB agreed to purchase the fronton property for $23 million. The contract required EB to place an initial deposit of $1 million into an escrow account. The contract also called for a due diligence period of sixty days from the date of the contract’s signing. During that time, EB was permitted to conduct any inspections of the property it deemed necessary. If EB gave notice of cancellation to DK Arena within the sixty- *88 day due diligence period, the contract called for the return of EB’s deposit. Failure to give notice of cancellation would be considered EB’s “as is” acceptance of the property. Closing was to occur within thirty days of the expiration of the due diligence period, at which time EB was required to pay DK Arena the remaining $22 million of the purchase price. The contract further provided that any modifications to the contract would “not be binding unless in writing, signed and delivered by the party to be bound.”
On the same day the contract was signed, the parties also executed an addendum to the contract. The addendum clarified that EB was permitted to terminate the agreement at any time during the due diligence period and stated that if EB did not give notice of termination within the sixty-day period, the deposit would be released to DK Arena. In addition, paragraph fourteen of the addendum, titled “Land Use Application,” required DK Arena and “and its principal, Mr. Don King,” to participate in the process of seeking local government approval for EB’s development project and to participate in the project’s marketing and promotion. At trial, King said he understood this provision to mean that he was required to use his personal influence to lobby in support of approval for the project. Despite King’s participation, the addendum stated: “This transaction does not create a joint venture or partnership relationship among the Parties.”
Shortly after the contract and the addendum were executed, Markey proposed that the parties amend the agreement to make King a partner in EB’s development project. The parties continued to negotiate the terms of this proposed joint venture while EB began to seek government approval for the project. On September 13, 2004, the parties executed a written amendment to the contract extending the due diligence period by fourteen days. Markey testified that over the course of several meetings the parties worked out the key terms of the partnership agreement, which Markey said King agreed to. In his own testimony, King disputed Mar-key’s claim that he agreed to the joint venture, explaining that while he listened to Markers proposal and passed it on to his lawyers for review, he never agreed to it.
On October 4, the day the extended due diligence period was to expire, King, Mar-key, and their respective attorneys met at King’s office. The parties discussed the status of the development project and Markey expressed concern that the project would not be approved by the Mangonia Park municipal government. Markey was also concerned that the due diligence period would expire before the terms of the parties’ joint venture agreement could be “memorialized.” King’s actions at this point were disputed at trial. According to Markey, King agreed to hold the due diligence period in indefinite “abeyance” until the joint venture agreement could be completed. By contrast, King asserted that while he agreed to an extension of the due diligence period, the extension was limited to one week and the deposit was to be due on October 11 unless EB cancelled the contract before that date.[2] Regardless, it is undisputed that the parties failed to make any written memorandum of the alleged agreement.
*89 The following evening, Markey and King attended a meeting of the Mangonia Park Town Council. Markey presented site plans and renderings of the project, and King described the benefits he believed the project would bring to the community. The council expressed concern that it had not been given enough notice to review the proposal and scheduled an informational meeting for October 26, which King stated he would attend. Following the October 4 meeting, King met several times with County Commissioner Addie Greene. King testified that he tried to obtain Greene’s support for the project. Greene told King that MGM had approached her about building an entertainment facility on the property. She encouraged King to review MGM’s proposal.
King subsequently failed to attend the October 26 town council meeting. As described by the district court:
Markey spoke on behalf of the project, but the council’s skepticism “rapidly turned to hostility.” Commissioner Greene addressed the meeting and disclosed MGM’s proposal for the arena property, which would “bring over 2,000 jobs” to the county. She said she had told King that the county preferred the MGM project, not Markey’s. Both Mar-key and his lawyers believed that King’s absence from the meeting was “very damaging to the prospect[s]” of the project.
DK Arena, 31 So.3d at 320 (alteration in original). King testified at trial that from his perspective, he believed the escrow payment was due on October 11. He said that once that date had passed and EB failed to release the deposit, he considered EB to be in breach of the contract. Thus, King believed that he was no longer obligated to, attend the October 26 meeting.
Evidence was presented at trial that on October 25, the day before the town council meeting, DK Arena faxed a demand to the escrow agent asserting that the due diligence period had expired and demanding the release of the deposit. However, EB did not receive notice of this demand until October 27. Based on the events of the town council meeting the previous day, EB instructed the escrow agent not to release the payment. EB then sent a letter to DK Arena asserting that King had breached the agreement by failing “to cooperate in the governmental and quasi-governmental processes.” EB demanded a return of the deposit, but DK Arena instructed the escrow agent not to release the funds to EB.
DK Arena filed suit alleging a single count of breach of contract and seeking the release of the $1 million escrow deposit. EB filed an answer and asserted several counterclaims, including breach of contract, breach of an oral joint venture agreement, and breach of fiduciary duty. The trial court issued its final judgment on December 5, 2008, finding in favor of EB on all claims.
The Trial Court’s Final Judgment
In its final judgment, the trial court first rejected DK Arena’s claim that EB breached the contract by failing to release the deposit, determining, as a question of fact, that the due diligence period was extended for an indefinite period of time at the parties’ meeting on October 4. The trial court acknowledged that the contract contained a provision requiring all amendments to be in writing, but concluded that this provision did not render the oral extension of the due diligence period invalid. The court explained that “[a] written contract may be modified by an oral agreement if the parties have accepted and acted upon the oral agreement in a manner that would work a fraud on either party to refuse to enforce it.” (Quoting Blue Paper, Inc. v. Provost, 914 So.2d 1048, 1052 *90 (Fla. 4th DCA 2005)). The trial court further stated: “Moreover, the seller cannot take advantage of a delay in the buyer’s performance which the seller approved, even where time is of the essence under the contract.” (Citing Forbes v. Babel, 70 So.2d 371, 372 (Fla.1953)).
Second, the trial court held that King’s failure to attend the town council meeting on October 26 constituted a breach of DK Arena’s obligations under the contract. The court stated that if King intended to not attend the meeting because he believed EB was in breach, DK Arena had a duty to use reasonable efforts to notify EB of King’s unwillingness to attend unless the deposit was released. The court also found that Commissioner Greene’s statements at the meeting showed that DK Arena was dealing with other purchasers while under contract with EB. The trial court held that EB was entitled to the return of its escrow deposit and damages for DK Arena’s breach of contract.
Finally, the trial court concluded that the understanding reached by the parties at the October 4 meeting resulted in the creation of an oral joint venture agreement, which entailed, at minimum, a duty to deal “in good faith to conclude modified partnership documents containing the final details of the partnership.” The trial court held that DK Arena’s actions constituted a breach of those duties, and awarded EB an additional $500,000 in damages.
The Fourth District’s Decision
DK Arena appealed the trial court’s decision to the Fourth District, challenging both the trial court’s finding of an oral joint venture agreement and its conclusion that EB was entitled to the return of the escrow deposit. With regard to the finding of a joint venture agreement, the Fourth District agreed that there was insufficient evidence to support the trial court’s conclusion, stating: “At best, DK Arena and EB had an ‘agreement to agree’ on a joint venture in the future, which does not give rise to a contract that entitles a party to recover damages for breach.” DK Arena, 31 So.3d at 326. The Fourth District therefore reversed the trial court’s joint venture determination and vacated the damages award of $500,000. Id. at 316.
As to the trial court’s conclusion that EB was entitled to the return of its escrow deposit, DK Arena argued in part that King’s agreement to hold the due diligence period in abeyance was unenforceable under the Statute of Frauds. See § 725.01, Fla. Stat. (2004). The Fourth District rejected DK Arena’s argument, holding: “[T]he doctrine of estoppel prevents DK Arena from relying on the statute to invalidate its agreement to extend the due diligence period. EB could therefore terminate the contract during the extended due diligence period and obtain the return of its deposit.” DK Arena, 31 So.3d at 322.
The Fourth District acknowledged that under the Statute of Frauds, all contracts for the sale of land must be in writing. The district court reasoned, however, that in this case “EB changed its position in reliance upon the oral agreement to extend the due diligence period — it did not give notice ... that it intended to terminate the contract.” Id. at 323. Because EB relied on the parties’ agreement to extend the due diligence period, the district court held that DK Arena was estopped from arguing that the agreement was invalid under the Statute of Frauds. See id. (citing Young v. Pottinger, 340 So.2d 518, 521 (Fla. 2d DCA 1976)). On that basis, the Fourth District affirmed the trial court’s finding that EB was entitled to the return of the *91 deposit. Id.[3]
ANALYSIS
In this opinion, we review the district court’s finding that the oral extension of the contractual due diligence period was enforceable, notwithstanding the Statute of Frauds, under the “doctrine of estoppel.” See DK Arena, 31 So.3d at 322. The district court held:
The key to this case is that EB changed its position in reliance upon the oral agreement to extend the due diligence period — it did not give notice under paragraph 10 of the addendum that it intended to terminate the contract. This is the basis of an estoppel that prevents DK Arena from avoiding the extension to which it agreed.
Id. at 323. The Fourth District concluded that “EB could therefore terminate the contract during the extended due diligence period and obtain the return of its deposit.” Id. at 322.
The question now before this Court is whether the district court’s holding violates the rule announced in Tanenbaum v. Biscayne Osteopathic Hospital, Inc., 190 So.2d 777 (Fla.1966). In Tanenbaum, the plaintiff sought enforcement of an oral agreement that the Statute of Frauds required to be in writing. The plaintiff argued that the oral agreement, combined with his own detrimental reliance on the defendant’s representations, rendered the contract enforceable under the doctrine of promissory estoppel. Id. at 778. We rejected the plaintiffs argument, holding: “The question that emerges for resolution by us is whether or not we will adopt by judicial action the doctrine of promissory estoppel as a sort of counteraction to the legislatively created Statute of Frauds. This we decline to do.” Id. at 779.
Whether the oral agreement in this case is unenforceable under the Statute of Frauds is a pure question of law, which we review de novo. See D'Angelo v. Fitzmaurice, 863 So.2d 311, 314 (Fla.2003) (citing Armstrong v. Harris, 773 So.2d 7 (Fla.2000)). However, the trial court’s findings of fact are presumptively correct and must stand unless clearly erroneous. See Chiles v. State Employees Attorneys Guild, 734 So.2d 1030, 1034 (Fla.1999) (citing Marshall v. Johnson, 392 So.2d 249, 250 (Fla.1980)). For the reasons discussed below, we conclude that the Fourth District incorrectly relied on the doctrine of promissory estoppel as an exception to the Statute of Frauds. Accordingly, we quash the decision of the district court to the extent that it is inconsistent with this opinion and remand for consideration of any additional issues not addressed herein.
The Statute of Frauds
Initially, it is undisputed that as a contract for the sale of land, the agreement between the parties in this case falls within the purview of section 725.01, Florida Statutes (2004), commonly referred to as the “Statute of Frauds.” See Tanenbaum, 190 So.2d at 778. The statute provides, in pertinent part:
No action shall be brought whereby ... to charge any person ... upon any contract for the sale of lands, tenements *92 or hereditaments, or of any uncertain interest in or concerning them ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized.
§ 725.01, Fla. Stat. (2004).
Florida’s Statute of Frauds is a substantial copy of the English statute entitled, “A Statute for the Prevention of Frauds and Perjuries,” enacted by the English Parliament in 1676. See Tate’s Adm’r v. Jones’ Ex’r, 16 Fla. 216, 240-41 (1877) (citing 29 Charles II (1676) Ch. 3, § 4); see also 9 Richard A. Lord, Williston on Contracts § 21:1 (4th ed. 2000). The original statute provided that certain classes of contracts— including contracts involving an interest in land, promises by an executor or administrator to pay damages out of his personal estate, promises to pay the debts of another person, agreements made upon consideration of marriage, and agreements not to be performed within one year of their making — would not be enforceable unless reduced to writing and signed by the parties to be charged or their lawful agents. See 9 Williston § 21:3. “In general the primary purpose of the Statute of Frauds is assumed to be evidentiary, to provide reliable evidence of the existence and terms of the contract, and the classes of contracts covered seem for the most part to have been selected because of importance or complexity.” Restatement (Second) of Contracts ch. 5, stat. note (1981).[4]
The large majority of American states have adopted some form of the Statute of Frauds. See 4 Arthur L. Corbin et al., Corbin on Contracts § 12.1 n. 18 (rev. ed. 2012) (commenting that “[a]ll states except Louisiana and New Mexico now have statutes similar to the English statute”). As observed by the First District Court of Appeal, “Most American statutes of frauds follow the English statute in enumerating the classes of contracts required to be evidenced in writing in order to be enforceable, with some variations of wording.” Collier v. Brooks, 632 So.2d 149, 154 (Fla. 1st DCA 1994).
A Statute of Frauds was first enacted in Florida in 1828. See Tate’s Adm’r, 16 Fla. at 239 (citing Thomp. Dig. 217-18, act of Nov. 15, 1828). The purpose of Florida’s Statute of Frauds is the same as that of the original, namely, “to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos.” Yates v. Ball, 132 Fla. 132, 181 So. 341, 344 (1937). As the First District stated in Collier, “Some jurisdictions tend toward restricting the operation of the statute by rigid construction, freely admitting and extending exceptions *93 and distinctions supporting the enforceability of oral contracts, while other jurisdictions, commenting on the beneficial effects of . the statute, tend to restrict rather than enlarge the exceptions.” 632 So.2d at 154. In Florida, it has long been recognized that the Statute of Frauds is a legislative prerogative, grounded in a policy judgment that certain contracts should not be enforced unless supported by written evidence. See Tanenbaum, 190 So.2d at 779. Thus, we held in Yates that “[t]he statute should be strictly construed to prevent the fraud it was designed to correct, and so long as it can be made to effectuate this purpose, courts should be reluctant to take cases from its protection.” 181 So. at 344.
Promissory Estoppel
The question that arose in Tanen-baum was whether the doctrine of promissory estoppel should be adopted as an exception to the Statute of Frauds. See 190 So.2d at 779. Generally stated, promissory estoppel is “[t]he principle that a promise made without consideration may nonetheless be enforced to prevent injustice if the promisor should have reasonably expected the promisee to rely on the promise and if the promisee did actually rely on the promise to his or her detriment.” Black’s Law Dictionary 631 (9th ed. 2009). As the definition indicates, promissory estoppel traditionally serves as an exception to the requirement of consideration in the formation of a contract. See Se. Sales & Serv. Co. v. T.T. Watson, Inc., 172 So.2d 239, 241 (Fla. 2d DCA 1965). The elements of the doctrine are set out in section 90 of the Restatement (Second) of Contracts, which provides:
[1] A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and [2] which does induce such action or forbearance is binding if [3] injustice can be avoided only by enforcement of the promise.
See W.R. Grace and Co. v. Geodata Serv., Inc., 547 So.2d 919, 924 (Fla.1989) (adopting the Restatement definition of promissory estoppel). “A promise binding under [section 90] is a contract, and full-scale enforcement by normal remedies is appropriate.” Restatement (Second) of Contracts § 90, cmt. d.
Some jurisdictions, however, have held that promissory estoppel may operate as an exception to the Statute of Frauds as well as to the requirement of consideration. Section 139(a)(1) of the Second Restatement, entitled, “Enforcement By Virtue of Action in Reliance,” expressly adopts this view:
A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise.
(Emphasis added); see also Joseph M. Perillo, Calamari and Perillo on Contracts § 19.48 (6th ed. 2009) (encouraging adoption of a promissory estoppel exception to the Statute of Frauds).
State courts have taken varying approaches to the Restatement’s position. Some courts have agreed with the Second Restatement’s view that promissory estop-pel may be applied to enforce oral promises that would otherwise be unenforceable under the Statute of Frauds. See, e.g., Alaska Democratic Party v. Rice, 934 P.2d 1313 (Alaska 1997); Brown v. Branch, 758 N.E.2d 48 (Ind.2001); Kolkman v. Roth, 656 N.W.2d 148 (Iowa 2003). Other courts have held that promissory estoppel is an exception to the Statute of Frauds only when there has been an ancillary promise to memorialize the unwritten agreement in *94 a manner that complies with the Statute. See, e.g., Tiffany Inc. v. W.M.K Transit Mix, Inc., 16 Ariz.App. 415, 493 P.2d 1220 (1972); Nagle v. Nagle, 633 S.W.2d 796 (Tex.1982). The Supreme Court of Utah has held that promissory estoppel is an exception only when a party has manifested an intention not to assert the Statute in the course of entering into an unwritten agreement. See Fericks v. Lucy Ann Soffe Trust, 100 P.3d 1200, 1204 (Utah 2004). The Supreme Court of Kentucky, despite prior language appearing to endorse a promissory estoppel exception, recently dismissed such language as dicta and stated that “it is not clear that under Kentucky law promissory estoppel can defeat the Statute of Frauds.” Sawyer v. Mills, 295 S.W.3d 79, 89 (Ky.2009).
Notwithstanding the views of courts in other jurisdictions, this Court early on expressed skepticism of arguments in favor of an estoppel exception. In South Investment Corp. v. Norton, 57 So.2d 1, 3 (Fla.1952), we quoted favorably the following statement from the New York Court of Appeals:
The doctrine of estoppel, when invoked for the purpose of working a change in the title to land, is to be applied with great caution. It permits verbal statements or admissions to be substituted in place of the written evidence of-transfer which the statute of frauds and the general rules of law require in such cases, and hence should not be applied unless the grounds upon which it rests ai’e clearly and satisfactorily established, and not then except in support of a clear equity, or to prevent fraud.
(Quoting Lyon v. Morgan, 143 N.Y. 505, 38 N.E. 960, 961 (1894)). In South Investment Corp., we declined to enforce an oral promise to allow the plaintiff to exercise an option to purchase real property after the option had expired, stating that we were “not persuaded that this is a case where to refuse to enforce the oral promise ‘would be virtually to sanction the perpetration of fraud or would result in other injustice.’ ” Id. at 3 (quoting 19 Am.Jur., Estoppel § 53).
Subsequently, in Tanenbaum, we unequivocally rejected a promissory estoppel exception to Florida’s Statute of Frauds. The petitioner in that case was a Pennsylvania physician who entered into an oral employment agreement with a Miami hospital, whereby the hospital agreed to employ the petitioner as a radiologist for a minimum of five years. In reliance on this agreement, the petitioner quit his job and moved to Florida. Several months later, the hospital notified the petitioner that his employment would be discontinued. The petitioner filed suit, alleging that the hospital had breached the oral agreement. See Tanenbaum, 190 So.2d at 778.
The hospital defended against the suit on the grounds that the oral employment contract, as an agreement not to be performed within one year of its making, fell within the Statute of Frauds and was thus unenforceable. The trial court agreed and granted a directed verdict for the hospital. Id. On appeal, the petitioner argued that despite the applicability of the Statute of Frauds, the agreement was enforceable under the doctrine of promissory estoppel. The Third District rejected the argument and affirmed the trial court’s ruling, finding no cases supporting the petitioner’s argument that promissory estoppel could act as an exception to the Statute of Frauds in Florida. See Tanenbaum v. Biscayne Osteopathic Hosp., Inc., 173 So.2d 492, 495 (Fla. 3d DCA 1965).
This Court granted review and agreed with the Third District’s conclusion. We first acknowledged cases from other jurisdictions holding that promissory- estoppel could create an enforceable agreement *95 notwithstanding the Statute of Frauds. See Tanenbaum, 190 So.2d at 779 (citing Alaska Airlines, Inc. v. Stephenson, 217 F.2d 295 (9th Cir.1954); Fibreboard Prod., Inc. v. Townsend, 202 F.2d 180 (9th Cir.1953); Seymour v. Oelrichs, 156 Cal. 782, 106 P. 88 (1909)). We discussed the doctrine of promissory estoppel as well as Florida precedent regarding the Statute of Frauds, particularly our statement in Yates that “[t]he statute should be strictly construed to prevent the fraud it was designed to correct.... ” Id. (quoting Yates, 181 So. at 344).
Ultimately, we declined to adopt a promissory estoppel exception to Florida’s Statute of Frauds, stating:
We agree with the conclusions of the Circuit Court and District Court of Appeal in rejecting the so-called doctrine of promissory estoppel and especially with the observation of the latter with reference to embracing it in view of the legislative prerogative of dealing with matters of this nature.
The petitioner had but to follow the provisions of the Statute of Frauds to secure his rights under the arrangement with the respondent instead of taking the position, rather tardily that they did not apply to him. Thirty-three years have passed since the Restatement we have quoted was adopted and there have been about 15 intervening sessions of the legislature at which the contents of Sec. 90 of the Restatement could have been incorporated into the act yet we know of no such effort or accomplishment.
Id. Accordingly, we held that the parties’ oral agreement was unenforceable and affirmed the Third District’s decision. Id.
Tanenbaum remains this Court’s governing precedent on the question of whether promissory estoppel is an exception to the Statute of Frauds. In Coral Way Properties, Ltd. v. Roses, 565 So.2d 372 (Fla. 3d DCA 1990), the defendant, Coral Way, leased office space to corporation ISS, which in turn subleased the space to plaintiff Joseph Roses. Coral Way later evicted ISS and sought to have Roses removed from the property. Roses claimed that in negotiating his sublease, he relied on oral assurances from Coral Way that he could continue to occupy the property even if ISS was evicted. Id. at 373. The Third District held that the alleged oral representations were unenforceable, stating: “This case is controlled by Tanenbaum, where the supreme court declined to adopt promissory estoppel as a judicial counteraction to the legislatively created statute of frauds.” Id. at 374.
More recently, in City of Orlando v. West Orange Country Club, Inc., 9 So.3d 1268 (Fla. 5th DCA 2009), the plaintiff, owner of a golf course and country club, filed suit against the City of Orlando seeking to enforce an agreement by the city to provide reclaimed water at no charge for a period of twenty years. The Fifth District found that the contract was not signed by either party and that its enforcement was therefore barred by the Statute of Frauds. Id. at 1271. The Fifth District further held: “With respect to the trial court’s determination that the Defendants can be held liable for performance of the contract under an estoppel theory, the law is well-settled that ‘[t]he doctrine of promissory estoppel cannot be used to circumvent the statute of frauds.’ ” Id. (quoting Harris v. School Bd. of Duval County, 921 So.2d 725, 735 n. 9 (Fla. 1st DCA 2006)).[5]
*96 In addition, district courts have recognized that pursuant to the rule stated in Tanenbaum, a written contract falling within the Statute of Frauds cannot be orally modified through the operation of promissory estoppel. In Wharfside at Boca Pointe, Inc. v. Superior Bank, 741 So.2d 542 (Fla. 4th DCA 1999), for example, the parties executed a written contract for the sale of an interest in a real estate project for $3.1 million. Id. at 543. Closing failed to occur on time, and the seller assigned its interest in the project to another party. Id. at 543-44. Several months later, the buyer filed suit alleging that the seller’s action violated an oral agreement for a reduced purchase price of $1.6 million and an extension of the closing date. Id. at 544. The Fourth District agreed that the alleged oral modification, if it occurred, was invalid due to the Statute of Frauds, holding: “An agreement that is required by the statute of frauds to be in writing cannot be orally modified.” Id. at 545; see also Shore Holdings, Inc. v. Seagate Beach Quarters, Inc., 842 So.2d 1010, 1012 (Fla. 4th DCA 2003). Similarly, the Third District held in Bradley v. Sanchez, 943 So.2d 218, 222 (Fla. 3d DCA 2006), “the statute of frauds prohibits the oral modification of a contract for the sale of land under the doctrine of promissory es-toppel.”
This Case
Based on the precedent described above, we conclude that the Fourth District improperly applied the doctrine of promissory estoppel in upholding an oral modification to the contract between EB and DK Arena. Admittedly, the Fourth District did not expressly identify promissory estoppel as the basis of its holding; rather, it stated that “the doctrine of estop-pel prevented] DK Arena from relying on the statute to invalidate its agreement to extend the due diligence period.” DK Arena, 31 So.3d at 322 (emphasis added). In addition, in distinguishing cases holding that promissory estoppel may not be used to circumvent the Statute of Frauds, the Fourth District reasoned that such cases did not apply because EB’s- case did not involve “an attempt to set up a new enforceable promise under the doctrine of promissory estoppel.” Id. at 325.
Despite the Fourth District’s statement, its basis for finding the extension enforceable falls squarely within the definition of promissory estoppel. As discussed, the doctrine applies when there is (1) a promise which the promisor should reasonably expect to induce action or forbearance, (2) action or forbearance in reliance on the promise, and (3) injustice resulting if the promise is not enforced. See W.R. Grace, 547 So.2d at 924. Here, the Fourth District based its decision on King’s representation that the due diligence period would be held in indefinite “abeyance,” followed by EB’s reliance on the representation. See DK Arena, 31 So.3d at 323 (“The key to this case is that EB changed its position in reliance upon the oral agreement to extend the due diligence period.... ”). Thus, the district court held that the due diligence period was validly extended, and that EB retained an unqualified right to “terminate the contract ... and obtain the return of its deposit.” Id. at 322. This amounted to a modification of the terms of the contract under a promissory estoppel theory. The failure of the district court to describe its holding as *97 based upon “promissory estoppel” is merely semantic.
In holding that DK Arena’s promise combined with EB’s detrimental reliance supported a valid modification to the contract, the Fourth District applied an improper estoppel exception to the Statute of Frauds, in express and direct conflict with our decision in Tanenbaum. EB does not ask this Court to recede from Tanenbaum, nor do we find any justification for doing so. As we explained in Tanenbaum, application of the Statute of Frauds is a matter of legislative prerogative; the judicial doctrine of promissory estoppel may not be used to circumvent its requirements. See 190 So.2d at 779. Furthermore, in this case, as in Tanenbaum, the parties “had but to follow the provisions of the Statute of Frauds to secure [their] rights....” Id. This case, if any, illustrates the usefulness of a writing requirement. At trial, the facts surrounding the modification were heavily disputed. Much confusion could have been avoided had the parties simply placed their agreement in writing. Indeed, the parties did so on one prior occasion, executing a written amendment to the contract extending the due diligence period until October 4, 2004.
Under the Statute of Frauds, any modification to the contract was unenforceable unless memorialized in a written document signed by the parties or their authorized representatives. See § 725.01, Fla. Stat. (2004). Absent an amendment that complied with the requirements of the Statute, the parties were bound by their written agreement. The due diligence period therefore expired on October 4, 2004. On that date, EB lost its right to terminate the contract of sale at will.
Issues on Remand
Despite our conclusion that the district court’s holding is in violation of our decision in Tanenbaum, this finding does not resolve the question of the parties’ entitlement to the deposit. Specifically, each party may have been in breach of the contract under the trial court’s final judgment. These issues are beyond the scope of the conflict on which we granted review, and we decline to address them. See Bifulco v. Patient Bus. & Fin. Servs. Inc., 39 So.3d 1255, 1256 n. 3 (Fla.2010) (declining to address issues beyond the scope of the conflict on which this Court granted review). Rather, we remand the case to the district court for consideration of these and any additional issues not resolved by this opinion, including entitlement to attorney’s fees. However, we provide the following guidance in order to clarify the scope of these issues on remand.
First, EB argues that its failure to release the deposit after the contractually called-for date of October 4, 2004, was justified under the doctrine of “waiver” or “waiver and estoppel.” The doctrine is based on the principle that “[a] party may waive any right to which he is legally entitled, whether secured by contract, conferred by statute, or guaranteed by the Constitution.” Gilman v. Butzloff, 155 Fla. 888, 22 So.2d 263, 265 (1945) (quoting Bellaire Securities Corp. v. Brown, 124 Fla. 47, 168 So. 625, 639 (1936)). While waiver is sometimes viewed as related to estoppel, the two doctrines are founded on different principles and are considered distinct:
Estoppel is designed to prevent fraud and injustice. In contrast, waiver is the intentional relinquishment, express or implied, of a known right. Although closely related, the doctrines of estoppel and waiver frequently are confused. Waiver operates to “estop” one from asserting that upon which he otherwise might have relied, but it is not a true estoppel. Waiver does not require detrimental reliance.
*98 SourceTrack, LLC v. Ariba, Inc., 958 So.2d 523, 526-27 (Fla. 2d DCA 2007) (citations omitted). “Waiver involves the act and conduct of only one of the parties, but equitable estoppel involves the conduct of both parties. Estoppel frequently carries the implication of fraud, but waiver never does.” 22 Fla. Jur.2d, Estoppel and Waiver § 31.
In relation to the Statute of Frauds, the waiver doctrine has been invoked in cases involving induced delays in performance. Thus, “if the plaintiff has been caused to delay his performance beyond the specified time by request or agreement or other conduct of the defendant, the plaintiff can enforce the contract in spite of his delay.” 4 Corbin § 13.9. In Gilman, for example, the defendant entered into a written contract to sell real property to the plaintiff. See Gilman, 22 So.2d at 264. While the contract required the property to be turned over to the buyer within thirty-five days of the contract’s execution, the property was not turned over until several months later. Id. After accepting the property, the buyer filed suit against the seller seeking monetary damages for the delay. Id. The trial court found for the seller and this Court affirmed the ruling on appeal, finding that “[t]here was substantial evidence in the record to prove the waiver of that part of the contract relied upon for recovery.” Id. at 265. We explained that parties may waive any right to which they are legally entitled, and observed that this principle was “not in conflict with the rule that the terms of a sealed contract cannot be changed by parol.” Id.; see also Forbes, 70 So.2d at 372 (“The law is well settled that the vendor cannot take advantage of a delay in performance which he condoned or was a party to.”).
In its decision in DK Arena, the Fourth District appears to have relied on cases involving delayed performance under the waiver doctrine in holding that the modification to the contract was enforceable. See 31 So.3d at 324-25 (citing United of Omaha Life Ins. Co. v. Nob Hill Assocs., 450 So.2d 536 (Fla. 3d DCA 1984); Affordable Homes, Inc. v. Devil’s Run, Ltd., 408 So.2d 679 (Fla. 1st DCA 1982); Young v. Pottinger, 340 So.2d 518 (Fla. 2d DCA 1977)).[6] However, the waiver doctrine does not support the district court’s holding. The instant case did not involve a simple delay in performance, but rather concerned an agreement which created an extended due diligence period under which EB held an unqualified right to terminate the contract. This modification was unenforceable due to operation of the Statute of Frauds. On remand, however, the district court should consider whether King’s representations excused EB’s failure to deliver the deposit on the date called for by the written contract, if such delivery was in fact required absent an initial demand by DK Arena.
*99 In addition, EB argues that it is entitled to the return of the deposit, notwithstanding its own possible breach of contract, due to an independent breach by DK Arena. In its final judgment, the trial court stated:
DK and Don King, individually, breached the contract with E.B. by failing to reasonably support the project and cooperate with E.B. in the approval, marketing, and promotion of the project. ...
Don King was obligated to attend the October 26, 2004 Town Council meeting, consistent with his representations to the Town Council and to E.B. If King was intending not to attend the October 26, 2004, meeting because of E.B.’s failure to release the escrow deposit, despite his presence in Palm Beach County on that date, DK had a duty to use reasonable efforts to notify E.B. of his unavailability or unwillingness to attend unless the escrow was first released. He did neither.
The evidence concerning statements by County Commissioner Addie Green at the October 26, 2004 meeting also shows that seller and Mr. King failed to fulfill their obligations under the contract. DK was dealing with other purchasers while under contract with E.B. DK’s conduct in this regard further supports the Court’s conclusion that DK and Mr. King failed to fulfill their obligations under the contract. Consequently, E.B. is entitled to the return of the escrow deposit provided for under the contract, in addition to damages caused by DK’s breach.
The trial court further commented that “[ejven in the absence of the due diligence extension, under the circumstances of this case, the failure of E.B. to have released the deposit by October 26, 2004, at most, could be considered a non-material breach.” On remand, therefore, the district court should consider whether DK Arena’s breach of contract entitles EB to the return of the deposit.
Finally, the parties have each cited the following contractual provision in briefing before this Court: “In any claim or controversy arising out of or relating to this Contract, the prevailing party, which for purposes of this provision will include Buyer, Seller, will be awarded reasonable attorneys’ fees, costs and expenses in all trial and appellate level cases.” Because our decision does not resolve the question of which party is entitled to the deposit, we leave the issue of entitlement to attorneys’ fees to the district court on remand.
CONCLUSION
For the reasons discussed above, we find that the oral extension of the contractual due diligence period was unenforceable under Florida’s Statute of Frauds. Accordingly, we quash the decision of the Fourth District to the extent that it is inconsistent with this opinion and remand for consideration of any additional issues not resolved herein.
It is so ordered.
PARIENTE, LEWIS, LABARGA, and PERRY, JJ., concur.
POLSTON, C.J., concurs in result.
CANADY, J., dissents with an opinion.

. Under article V, section 3(b)(3) of the Florida Constitution, this Court "[m]ay review any decision of a district court of appeal ... that expressly and directly conflicts with a decision ... of the supreme court on the same question of law.” Although the Fourth District in DK Arena referred only generally to "the doctrine of estoppel” rather than to the doctrine of promissory estoppel, see 31 So.3d at 322, our decision to accept review is based on our conclusion, described in greater detail in this opinion, that the Fourth District in fact applied the doctrine of promissory estoppel in finding that the parties’ oral agreement was enforceable. To this extent, the Fourth District’s decision expressly and directly conflicts with the holding of Tanenbaum, and it is on this basis that we grant review.

. In its final judgment, the trial court observed that "King’s testimony on this point was inconsistent. At trial, he testified that the due diligence period was verbally extended at the October 4, 2004, meeting for one week. His prior deposition testimony, however, was that there had been no verbal extension of the due diligence period beyond October 4, 2004.”

. In addition to its argument based on the Statute of Frauds, DK Arena argued (1) that there was inadequate evidentiary support for the oral extension of the due diligence period, (2) that the extension violated the provision of the contract requiring all amendments to be in writing, and (3) that the extension was unenforceable as an agreement of. indefinite duration. See DK Arena, 31 So.3d at 321. The Fourth District rejected these arguments, and DK Arena does not challenge these aspects of the district court's decision before this Court.

. The history and purposes of the original English statute were described as follows by the Connecticut Supreme Court in a decision interpreting Connecticut’s Statute of Frauds:
The statute appears to have been enacted in response to developments in the common law arising out of the advent of the writ of assumpsit, which changed the general rule precluding enforcement of oral promises in the King’s courts. Thereafter, perjury and the subornation of perjury became a widespread and serious problem. Furthermore, because juries at that time decided cases on their own personal knowledge of the facts, rather than on the evidence introduced at trial, a requirement, in specified transactions, of “some memorandum or note ... in writing, and signed by the party to be charged” placed a limitation on the uncontrolled discretion of the jury. Although the British Parliament repealed most provisions of the statute ... in 1954[,] the statute nonetheless remains the law virtually everywhere in the United States.
C.R. Klewin, Inc. v. Flagship Properties, Inc., 220 Conn. 569, 600 A.2d 772, 775 (1991) (quoting 2A Arthur L. Corbin, Corbin on Contracts § 275 (1950)) (citations omitted).

. See also Consortium Info. Servs. Inc. v. Credit Data Servs. Inc., 149 Fed.Appx. 575, 580 (9th Cir.2005) (observing that "Florida law disallows promissory estoppel as a method of recovery that evades the statute of frauds” while "California law does not”) (Lovell, J., *96 dissenting); Eclipse Med., Inc. v. Am. Hydro-Surgical Instruments, Inc., 262 F.Supp.2d 1334, 1352 (S.D.Fla.1999) ("In Florida, it is a clearly established rule of law that the Distributors cannot avail themselves of the doctrine of promissory estoppel as a means to circumvent or defeat the Statute of Frauds.”).

. In its opinion, the Fourth District distinguished its prior opinion in Wharfside from cases involving delayed performance on the grounds that “the oral agreement [in Wharf-side ] sought to modify the sales price, an essential term of the contract.” DK Arena, 31 So.3d at 324. The district court continued, “The estoppel cases do not condone oral changes to such an important term of a written contract, but prevent a party from ignoring oral modifications to conditions of performance, where to do so, in light of one party’s reliance on the modifications, creates an injustice.” Id. at 324-25. This Court has never endorsed a distinction between cases involving "essential term[s]” of a contract versus "conditions of performance,” nor do we think such a distinction workable in practice. Rather, our cases involving waiver of performance stand merely for the principle that a party cannot take advantage of a breach of contract that he or she previously approved. See Forbes, 70 So.2d at 372.