HEDGE CAPITAL INVESTMENTS LIMITED, a company incorporated in England and Wales, Plaintiff,

v.

SUSTAINABLE GROWTH GROUP HOLDINGS LLC, a Delaware corporation, and Sustainable Growth Group USA, INC., a Delaware corporation, Defendants.

and

Sustainable Growth Group (UK) Limited (In Administration); et al., companies organized under the laws of England and Wales, Plaintiffs in Intervention

v.

Hedge Capital Investments Limited, a company incorporated in England and Wales, Defendants in Intervention.

Case No. 12–14100–CIV.

United States District Court, S.D. Florida, Ft. Pierce Division.

June 25, 2013.

Michael David Ehrenstein, Latasha N. Johnson, Ehrenstein Charbonneau Calderin PL, Miami, FL, for Plaintiff.

Aaron Van Johnson, Collins, Brown, Caldwell, Barkett & Garavaglia, Vero Beach, FL, Jay W. Freiberg, Katten, Muchin, Rosenman, LLP, New York, NY, for Defendant.

### ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

JOSE E. MARTINEZ, District Judge.

THIS CAUSE came before the Court upon Defendants Sustainable Growth Group Holdings, LLC ("SGG Holdings") and Sustainable Growth Group USA, Inc.'s ("SGG USA") Motion for Summary Judgment. (D.E. No. 78). Defendants SGG Holdings and SGG USA (collectively "Defendants") seek summary judgment on Plaintiff Hedge Capital Investments Limited's ("HCI" or "Plaintiff") Amended Complaint (D.E. No. 34) on the basis that there is no genuine issue of material fact. For the reasons set forth below, this Court grants Defendants' Motion for Summary Judgment.

### I. Background [1]

Plaintiff HCI, a foreign company incorporated in England and Wales, filed a

---

1. Under Southern District of Florida Local Rule 56.1, a party moving for summary judg-

complaint against Defendants SGG Holdings and SGG USA seeking damages and equitable relief arising from monies transferred by it to Sustainable Wealth Investments ("SWI"), which Plaintiff claims were then transferred to Defendants. (D.E. No. 78–1 ¶¶ 1, 6).

SGG Holdings and SGG USA are affiliates and are both Delaware companies doing business in Florida. *Id.* ¶ 8. Sustainable Growth Group Limited ("SGG Group") is a Hong Kong company that is an affiliate of SWI, a company incorporated in England and Wales. *Id.* ¶ 7. SGG Group "is accused of perpetrating fraudulent investment schemes and is currently being prosecuted by the UK Serious Fraud Office." *Id.* ¶ 9. The UK Serious Fraud Office appointed a Receiver, whose appointment covers SWI. *Id.* ¶ 16.

HCI alleges that "over multiple conversations with officers/agents/directors of SWI, they negotiated an agreement whereby they would deposit funds with SWI to be later invested." *Id.* ¶ 10. HCI's corporate representative, John Davies ("Davies"), stated that an oral agreement was made between himself and SWI's agents Andrew Zagorski ("Zagorski") and Gary West. *Id.* ¶¶ 11–12. HCI claims that they invested their funds in reliance on SWI and SGG Groups' representations. *Id.* ¶ 14. Specifically, the funds that HCI "deposited with SWI were to be held by SWI on the basis that any investment made by SWI would be first approved by HCI" and any transfer of

HCI's money by SWI would be in violation of their oral agreement. *Id.* ¶¶ 13, 15.

In accordance with their agreement, HCI began wiring funds to SWI on December 22, 2011. *Id.* ¶ 29. Between December 2011 and February 2012, HCI made seven wire transfers into SWI's account totaling 1.83 million pounds. (D.E. No. 34 Ex. 2). Davies states that the wire transfers do not have "any corresponding dates" or "any corresponding amounts for the money transferred from HCI to SWI, and the money transferred from SWI to SGG [Holdings]." (D.E. No. 78–1131). However, HCI claims there is a "genuine issue of material fact with respect to whether funds were wired to the Defendants from SWI pursuant to a purported loan agreement entered by Astra Resources as alleged by Defendants, since Astra Resources is plainly not the account holder for the bank records produced by Defendants." (D.E. No. 85 at 5).

Subsequent to the imposition of the Receiver for SWI by the UK Serious Fraud Office, Davies "requested assurances from SWI that their deposits were secured, and actually forwarded SWI language in an email that HCI wanted to see put in writing by SWI." (D.E. No. 78–1 ¶ 16). SWI's representative Zagorski did send them such a letter, but Davies admits that "Zagorski could not bind SWI due to the imposition of the receiver." *Id.* ¶ 17. Plaintiff's Amended Complaint alleges that Zagorski confirmed the receipt of HCI's

---

ment must submit a statement of material facts in separately numbered paragraphs supported by specific citations to the record. S.D. Fla. Local Rule 56.1(a). A party opposing summary judgment must submit a statement of material facts that "correspond with the order and with the paragraph numbering scheme used by the movant, but need not repeat the text of the movant's paragraphs." *Id.* "All material facts set forth in the movant's statement ... will be deemed admitted

unless controverted by the opposing party's statement, provided that the Court finds that the movant's statement is supported by evidence in the record." *Id.* Because Plaintiff did not contradict Defendants' statement of undisputed material facts and because Defendants' statements are supported by evidence in the record, the facts alleged in Defendants' statements are deemed admitted by Plaintiff. *See Joseph v. Napolitano*, 839 F.Supp.2d 1324, 1329 (S.D.Fla.2012).

funds and advised that HCI's funds were transferred from SWI to SGG Holdings where it would be "assigned to either equity within SGG (Holdings) LLC or apportioned to underlying land or companies on HCI's behalf and at HCI's discretion." (D.E. No. 34 ¶¶ 30–32).

After HCI was informed by Zagorski that HCI's money was transferred to the United States, HCI attempted to contact David Stockard ("Stockard") as the agent for SGG Holdings and SGG USA. *Id.* ¶¶ 18–19. Stockard drafted a memo to HCI. *Id.* ¶ 20. The memo states that HCI's investment was applied to a 5% interest in SGG Holdings. (D.E. No. 34 Ex. 6). The memo also references land acquired in Florida by SGG Holdings' wholly-owned subsidiary Sustainable Properties, LLC. *Id.*

Davies states the memo "was not reflective of HCI's agreement with SWI, did not confirm any security in the Florida property(ies), does not reference HCI's 1.83 million pound transfer to SWI in anyway, and does not reference any land purchased in Florida." (D.E. No. 78–1 ¶¶ 18–19). Davies states that "HCI never received any documented interest in the Florida Property aside from the *lis pendens* they filed in the suit, and bases HCI's only interest they had in the property on oral agreements or verbal promises." *Id.* ¶ 22. Additionally Davies states that HCI does not "own any percent interest in any of the Defendant Companies." *Id.* ¶ 23.

However, HCI alleges that "Defendants' own subsequent representations to HCI confirming receipt of HCI's investments serve to ratify the agreement entered by SWI on Defendants' behalf." (D.E. No. 85 at 2). To support this allegation, HCI relies on Stockard's memo to HCI "confirming receipt of HCI's funds and explaining that HCI's investment was applied to a 5% equity interest in Defendant SGG–

Holdings ... and warranting that HCI held an ownership interest in the St. Lucie Property by virtue of HCI's ownership in the holding company." *Id.* HCI believes this allegation is further supported by a conversation between Defendants' attorney, Craig Scully ("Scully"), and Davies where Scully stated that he did not "think giving [Davies] a mortgage interest would be very difficult at all." *Id.* at 3–4.

Due to the alleged breach of HCI and SWI's agreement, HCI filed a claim with SWI and SGG Groups' receiver. (D.E. No. 34–1 ¶ 24). HCI made a 1.83 million pound unsecured proof of claim with the Receiver for SWI. *Id.* ¶¶ 25–26. This is the same amount HCI is requesting in this present lawsuit against SGG Holdings and SGG USA. *Id.* ¶ 27.

HCI filed an Amended Complaint alleging: (i) constructive trust over the St. Lucie Property and/or proceeds of the property against SGG Holdings and SGG USA; (ii) resulting trust over the St. Lucie Property and/or proceeds of the property against SGG Holdings and SGG USA; (iii) fraudulent misrepresentation against SGG Holdings; (iv) breach of oral contract against SGG Holdings; (v) injunctive relief to prevent ownership transfer over the St. Lucie Property against SGG Holdings and SGG USA; (vi) conversion against SGG Holdings; (vii) failure to provide an accounting to HCI for disbursement and/or application of HCI's investment against SGG Holdings; and (viii) unjust enrichment against SGG Holdings and SGG USA. (D.E. No. 34 at 11–17).

## II. Legal Standard

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). By its very terms, this

standard provides that "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there will be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505; *Matsushita Electric Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. It is "material" if it might affect the outcome of the case under the governing law. *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. In addition, in considering a motion for summary judgment, the Court is required to view the evidence in the light most favorable to the non-moving party. *Id.* at 255, 106 S.Ct. 2505.

▮ If the moving party bears the burden of proof at trial, the moving party must establish all essential elements of the claim or defense in order to obtain summary judgment. *See United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F.2d 1428, 1438 (11th Cir.1991). The moving party " 'must support its motion with credible evidence ... that would entitle it to a directed verdict if not controverted at trial.' " *Id.* (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting)). "If the moving party makes such an affirmative showing, it is entitled to summary judgment unless the nonmoving party, in response, 'come[s] forward with significant, probative evidence demonstrating the existence of a triable issue of fact.' " *Four Parcels of Real Prop. in Greene and Tuscaloosa Counties*, 941 F.2d at 1438 (quot-

ing *Chanel, Inc. v. Italian Activewear of Fla., Inc.*, 931 F.2d 1472, 1477 (11th Cir. 1991)).

▮ In contrast, if the non-moving party bears the burden of proof at trial, the moving party may obtain summary judgment simply by establishing the non-existence of a genuine issue of material fact as to any essential element of a non-moving party's claim or affirmative defense. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548. When the non-moving party bears the burden of proof, the moving party does not have to "support its motion with affidavits or other similar material *negating* the opponent's claim." *Id.* at 323, 106 S.Ct. 2548 (emphasis in original). The moving party may discharge its burden in this situation by showing the Court that "there is an absence of evidence to support the nonmoving party's case." *Id.* at 324, 106 S.Ct. 2548. Once the moving party discharges its initial burden, a non-moving party who bears the burden of proof must cite "to particular parts of materials in the record" or show "that the materials cited do not establish the absence or presence of a genuine dispute...." Fed.R.Civ.P. 56(c)(1).

## III. Analysis

Defendants claim Plaintiff fails to establish that there was any type of agreement between the parties. (D.E. No. 78). This Court agrees.

▮ Under Florida law, "[a]n oral contract ... is subject to the basic requirements of contract law such as offer, acceptance, consideration and sufficient specification of essential terms." *St. Joe Corp. v. McIver*, 875 So.2d 375, 381 (Fla. 2004) (citations omitted). Plaintiff's Amended Complaint alleges only an indirect relationship between SWI, the company Plaintiff originally contracted with, and Defendants. (D.E. No. 34 ¶¶ 20, 30).

Plaintiff did not have any communication with Defendants until after its money had been deposited with SWI and SWI was placed in receivership. *Id.* In fact, Plaintiff states in the Amended Complaint that they "invested funds in reliance on SWI's and SGG Groups' representations and ostensible plan to purchase land in the United States, through their U.S. affiliate, and to provide ownership interest in the land development or equity in the holding company developing the land in exchange for HCI's financial investment." (D.E. No. 34 ¶ 20). The Amended Complaint does not allege Defendants were parties to the agreement between Plaintiff and SWI. Nor is there any evidence on the record to show the Defendants were parties to the agreement. Furthermore, "[c]orporations are separate legal entities and contracts made by a parent corporation do not bind a subsidiary merely because one corporation owns all of the stock of the other corporation." *Whetstone Candy Co. v. Kraft Foods, Inc.*, 351 F.3d 1067, 1074 (11th Cir.2003).

▬▬▬ Nevertheless, Plaintiff alleges that Defendants "ratified the agreement entered on its behalf by SWI and its agents." (D.E. No. 85). "Ratification of an agreement occurs where a person expressly or impliedly adopts an act or contract entered into [on] his or her behalf by another without authority." *Frankenmuth Mut. Ins. Co. v. Magaha*, 769 So.2d 1012, 1020 (Fla.2000). Plaintiff bases its claim of ratification on Stockard's memo addressed to HCI, which states that HCI's funds were applied to a 5% ownership interest in SGG Holdings. (D.E. No. 85 (citing D.E. No. 34 Ex. 7)). Plaintiff further alleges that the claim of ratification is corroborated by Davies' conversations with Defendants' attorney, Craig Scully. *Id.* However, Plaintiff's breach of contract claim is based on an agreement between HCI and SGG Holdings whereby "SGG Holdings agreed to buy real property with HCI's funds and to convey ownership interest in the property to HCI." (D.E. 34 at 14). Stockard's memo in no way ratified a contract to convey real property; it merely acknowledged SGG Holdings' receipt of HCI's funds, which was applied to a 5% ownership interest in SGG Holdings. (D.E. No. 34 Ex. 7). Further, Davies' conversations with attorney Scully did not ratify a contract to convey real property. In the conversation, Scully merely implied that a conveyance of property was possible stating that SGG Holdings would be "willing to convert that 5 percent interest into a direct land ownership proposition" and that "I don't think giving you a mortgage interest would be very difficult at all." (D.E. No. 85 at 11). Regardless of whether Scully had the power to ratify a contract to convey real property for his principal, Scully's statements do not demonstrate a showing of ratification. The evidence fails to establish a contract between Plaintiff and Defendants to convey real property and, thus, there is no genuine issue of material fact to sustain a claim for breach of oral contract against SGG Holdings.

▬▬▬ Additionally, the evidence fails to establish a genuine issue of material fact as to Plaintiff's claim of fraud against Defendants. Plaintiff alleges that "SGG Holdings made a false statement of material fact by representing that HCI's investment of funds in the U.S. Project would be used by SGG Holdings to purchase and develop land in which HCI would hold an ownership interest." (D.E. No. 34 at 13). However, those representations were made by SWI and SGG Group and not by SGG Holdings. (D.E. No. 34 ¶¶ 16–20). SGG Holdings is not bound by the actions of SWI or SGG Group. *See Whetstone Candy Co.*, 351 F.3d at 1074. Thus, this

Court finds that Plaintiff fails to establish a genuine issue of material fact to sustain a claim of fraudulent misrepresentation against SGG Holdings.

 Claims I, II, V, VI similarly fail to establish a sufficient connection between Plaintiff and Defendants to support actions for a constructive or resulting trust, conversion, or to warrant issuance of an injunction. Plaintiff did not have any communication with Defendants until after its money had been deposited with SWI and SWI was placed in receivership. (D.E. No. 34 ¶¶ 20, 30). In fact, Plaintiff states in their Amended Complaint that they "invested funds in reliance on SWI's and SGG Groups' representations and ostensible plan to purchase land in the United States, through their U.S. affiliate, and to provide ownership interest in the land development or equity in the holding company developing the land in exchange for HCI's financial investment." (D.E. No. 34 ¶ 20). The Amended Complaint does not allege Defendants were parties to the agreement between Plaintiff and SWI. Further, a contract for the sale of land falls within Florida's Statute of Frauds. *DK Arena, Inc. v. EB Acquisitions I, LLC,* 112 So.3d 85, 91–92 (Fla.2013). "No action shall be brought ... upon any contract for the sale of lands, tenements or hereditaments, or of any uncertain interest in or concerning them ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by her or him thereunto lawfully authorized." Fla. Stat. § 725.01. "[T]he Statute of Frauds is a legislative prerogative, grounded in a policy judgment that certain contracts should not be enforced unless supported by written evidence." *DK Arena,* 112 So.3d at 93. "The purpose of Flori-

da's Statute of Frauds is ... 'to intercept the frequency and success of actions based on nothing more than loose verbal statements or mere innuendos.'" *Id.* at 92 (*quoting Yates v. Ball,* 132 Fla. 132, 181 So. 341, 344 (1937)). Counts I, II, V, VI are premised on the purchase and development of real estate in Florida. (D.E. No. 34 at 11–15). As there exists no written contract, nor is there evidence that Defendants were parties to the agreement between Plaintiff and SWI, Defendants' Motion for Summary Judgment for Counts I, II, V, VI is granted.

 Count VII for accounting fails as well. "[A] suit for an accounting ... calls first for the establishment of the right or basis for the accounting with the actual accounting following." *A–1 Truck Rentals, Inc. v. Vilberg,* 222 So.2d 442, 444 (Fla. 3d DCA 1969). Where there is no proof of any contract between two parties and "no proof of any other special relationship that would give rise to an accounting remedy," an action for an accounting is not appropriate. *Jolley v. Chase Home Fin., LLC,* 213 Cal.App.4th 872, 910, 153 Cal.Rptr.3d 546 (2013). As there is no evidence of a contract between Plaintiff and Defendants, Count VII's claim for accounting is not appropriate.

 Additionally, where the plaintiff has the opportunity to obtain information during discovery and "does not explain why these deficiencies could not have been adequately addressed through discovery," the court may deny an accounting. *Border State Bank, N.A. v. AgCountry Farm Credit Servs.,* 535 F.3d 779, 785 (8th Cir.2008). Discovery in this case is closed. (D.E. No. 130 at 8:23–24). Plaintiff did not seek discovery against the Defendants. (D.E. No. 130 at 44:13–18). Further, where a request for accounting is premised on liability in other counts, and "those claims warrant dismissal, the claim for ac-

counting also fails." *Cox v. Mortgage Elec. Registration Sys., Inc.,* 794 F.Supp.2d 1060, 1065 (D.Minn.2011) (holding that "the information the [plaintiffs] seek is available through discovery if they can plead any valid claim, and the existence of this legal remedy renders an accounting unwarranted"). As such, the Court's grant of Defendants' Motion for Summary Judgment for Counts I, II, V, VI requires granting Defendants' Motion for Summary Judgment for Count VII for accounting.

 With regard to Count VIII for unjust enrichment, under Florida law, for a plaintiff to succeed on a claim of unjust enrichment, the plaintiff must show: "(1) [plaintiff] conferred a benefit on [defendant] of which [defendant] is aware, (2) [defendant] voluntarily accepted and retained the benefit conferred, and (3) 'the circumstances are such that it would be inequitable for [defendant] to retain the benefit without paying for it.'" *Nova Info. Sys., Inc. v. Greenwich Ins. Co.,* 365 F.3d 996, 1006–07 (11th Cir.2004) (*quoting Shibata v. Lim,* 133 F.Supp.2d 1311, 1316 (M.D.Fla.2000)). Where the plaintiff fails to prove that it, and not another party, provided the benefit, and the defendant appears to have knowingly received the benefit from that third party and has paid for the benefit, the defendant "has not retained a benefit for which justice and equity compel payment" to the plaintiff. *In re Gulf N. Transp., Inc.,* 340 B.R. 111, 124 (Bankr.M.D.Fla.2006). Here, Plaintiff has not proven that it, and not SWI, which is not a party in this case, enriched Defendants. Accordingly, Defendants' Motion for Summary Judgment for Count VIII is granted. After careful consideration, it is hereby:

**ORDERED and ADJUDGED** that

1. Defendants SGG USA and SGG Holdings' Motion for Summary Judgment (D.E. No. 78) is **GRANTED.**

2. Based on this Court granting Defendants' Motion for Summary Judgment (D.E. No. 78), Defendants SGG USA and SGG Holdings' Motion to Discharge Lis Pendens or, in the Alternative, Motion to Require Plaintiff to Post a Bond is **GRANTED in part and DENIED in part.** (D.E. No. 51). The motion is granted in that the Lis Pendens is discharged. The motion is denied in that Plaintiff is not required to post a bond.

3. This Court did not consider evidence relating to Plaintiffs in Intervention Sustainable Growth Group (UK) Limited (In Administration), Sustainable Wealth Investments (UK) Limited (In Administration), and Sustainable Agroenergy PLC's Reply to Response to Motion for Summary Judgment (D.E. No. 109) and, as such, Plaintiff's Motion to Strike Receiver's Unauthorized Reply in Connection with Receiver's Motion for Summary Judgment (D.E. No. 110) is **DENIED as moot.**

4. This Court did not consider filings relating to Plaintiff's Motion to Strike Notice of Filing as Improper Summary Judgment Evidence (D.E. No. 125). As such, the motion is **DENIED as moot.**

5. This case is **CLOSED** and all pending motions are **DENIED as moot.** Final Judgment shall be entered by separate order.